COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| | § | No. 08-18-00182-CV |
| IN THE INTEREST OF | § | |
| | | Appeal from |
| I.D.G., V.A.G., E.R.G., AND R.J.G., | § | |
| | | 65th District Court |
| CHILDREN. | § | |
| | | of El Paso County, Texas |
| | § | |
| | | (TC # 2017DCM6687) |
| | § | |

## OPINION ON MOTION FOR REHEARING

W.M.U. (Wanda) appeals from the judgment terminating her parental rights to I.D.G., V.A.G., E.R.G., and R.J.G.[1]  The trial court also terminated the parental rights of the biological father, V.G., but he has not appealed.  On April 9, 2019, we issued our opinion and judgment modifying the termination judgment to delete the finding under Section 161.001(b)(1)(K) and affirming the termination judgment as modified.  In our review of the legal and factual sufficiency issues, we did not address termination of Wanda's parental rights under Section 161.001(b)(1)(D) and (E) because Wanda did not challenge two other predicate termination grounds.  On May 17, 2019, the Texas Supreme Court decided *In re Z.M.M.* which holds that due process requires an appellate court to review a parent's sufficiency challenges directed at subsections D and E even when an alternate predicate termination ground is supported by

---

[1]  To protect the identity of the children, the opinion will refer to W.M.U. by the fictitious name "Wanda", to her mother H.U. by the fictitious name "Helen" and to the children by their initials or collectively as the children. *See* TEX.R.APP.P. 9.8.

sufficient evidence. *In re Z.M.M.,* No. 18-0734, --- S.W.3d ---, 2019 WL 2147266, at *1 (Tex. May 17, 2019)(per curiam); *see In re N.G.*, No. 18-0508, --- S.W.3d ---, 2019 WL 2147263 (Tex. May 17, 2019)(holding that due process and due course of law require an appellate court to review and detail its analysis as to termination of parental rights under subsections D or E). Wanda filed an amended motion for rehearing contending that we erred by failing to address the sufficiency challenges to the findings based on subsections D and E. The Department filed a response indicating that we must address these sufficiency challenges.

We grant Wanda's amended motion for rehearing, withdraw our opinion and judgment issued on April 9, 2019, and issue the following opinion and judgment in their place. Finding that the Texas Department of Family and Protective Services abandoned its request to terminate Wanda's parental rights under Section 161.001(b)(1)(K) of the Texas Family Code, we delete that affirmative finding from the termination order. We also find that the evidence is legally insufficient to support the termination finding under Section 161.001(b)(1)(D) of the Texas Family Code and delete that affirmative finding from the termination order. The termination order, as so modified, is affirmed.[2]

### FACTUAL SUMMARY

Wanda is the mother of four children, I.D.G., V.A.G., E.R.G., and R.J.G. In 2015, Wanda left the children, ranging in age from six years to nine years of age, at the Lee and Beulah Moor Children's Home in El Paso.[3] She provided her mother, Helen, with a power of attorney to consent to medical treatment for the children. The facility is a temporary group home for

---

[2] Our opinion and judgment disposing of the case were issued within the 180-day period established by TEX.R.JUD'L ADMIN. 6.2(a). As a result of the change in law made by *In re Z.M.M.* and *In re N.G.*, it became necessary to grant the appellant's motion for rehearing and withdraw our prior opinion and judgment. Under these circumstances, we have endeavored to comply with Rule 6.2(a)'s mandate to ensure that the appeal is brought to final disposition as quickly as reasonably possible even if it was not done within 180-days from the filing of the notice of appeal.

[3] Witnesses referred to the facility as the Lee Moor Home or the Lee Moor Children's Home.

children whose parents are having difficulty caring for the children. At the Lee Moor Home, the children are provided a safe home, and they receive counseling, attend school, and are provided medical care. The family is encouraged to participate with the children. Wanda visited the children only sporadically, and it was the children's grandmother, Helen, who participated in the majority of the children's events and activities. When Wanda attended events at the home, including counseling sessions, she focused on her telephone rather than engaging with the children. During the time the children were at Lee Moor Home, Helen cared for the children on the weekends. The children remained at the Lee Moor Home until the Fall of 2017.

On August 28, 2017, the Department received a report that Wanda had been in and out of jail and she had fled to Mexico with her boyfriend even though she was on probation. Helen informed the caseworker that she had cared for the children for the last eight years, but she could no longer be responsible for them due to her health issues and the children's behavior. The Department attempted to contact Wanda and V.G., but they could not locate either of them. I.D.G. said she had not seen her mother for several weeks and the younger children had not seen her recently and did not know her location. On October 6, 2017, the Department filed a petition seeking termination of Wanda's and V.G.'s parental rights. That same day, the trial court entered an emergency order naming the Department as the temporary sole managing conservator of the children. The court conducted the final trial in the case on September 14, 2018. Wanda was in federal custody and did not attend the trial. Wanda's criminal history includes federal convictions for human trafficking and importing marijuana. She was convicted on September 23, 2010 of encouraging and inducing the illegal entry of aliens and was placed on probation for five years. The terms of probation required Wanda to take parenting classes. In 2011, she was convicted of importing marijuana. Wanda committed this offense only one month

after she was placed on probation for the first offense. The court sentenced her to serve twenty-one months followed by probation for three years. Finally, Wanda was convicted on March 11, 2016 of transporting aliens, and she was sentenced to serve sixteen months in prison followed by supervised release for two years. Wanda's federal probation officer, Karen Eisenberg, testified at trial that she requested issuance of a warrant for Wanda in May 2017 after she left the halfway house and other violations of the terms of her supervised release. The court did not revoke Wanda's supervised release, but she was ordered to spend an additional ninety days at the halfway house. Wanda absconded from the halfway house again in September 2017. Following her release from the halfway house in 2018, Wanda was arrested in August 2018 for transporting aliens. At the time of the final hearing in this case, she was in federal custody and facing a new charge as well as revocation of her supervised release.

The trial court found that the Department had proven by clear and convincing evidence that Wanda had: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children, pursuant to § 161.00l(b)(l)(D), Texas Family Code; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to § 161.00l(b)(l)(E), Texas Family Code; (3) executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights, pursuant to § 161.001(b)(1)(K), Texas Family Code; (4) constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months and: (1) the Department has made reasonable efforts to return the children to the mother; (2) the mother has not regularly visited or maintained significant contact with the children; and (3) the mother has demonstrated an

inability to provide the children with a safe environment, pursuant to § 161.001(b)(l)(N), Texas Family Code; and (5) failed to comply with the provisions of a court order that specifically established the actions necessary for Wanda to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.001(b)(l)(O), Texas Family Code. The court also found by clear and convincing evidence that termination of Wanda's parental rights was in the children's best interest, and it appointed the Department as the permanent managing conservator of the children.

## PREDICATE TERMINATION GROUNDS

In Issues One through Three, Wanda challenges the legal and factual sufficiency of the evidence supporting the trial court's determination that her parental rights should be terminated based on subsections D, E, and K of Section 161.001(b)(1) of the Texas Family Code. Parental rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. *See* TEX.FAM.CODE ANN. § 161.001. Under this provision, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the children. *See id.* Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In the Interest of A.B.B.*, 482 S.W.3d 135, 138 (Tex.App.--El Paso 2015, pet. dism'd w.o.j.). Only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

*Standards of Review*

When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002); *see In re J.O.A.,* 283 S.W.3d 336, 344 (Tex. 2009). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *In the Interest of J.P.B.*, 180 S.W.3d at 573. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *In re J.P.B.*, 180 S.W.3d at 573; *In re J.F.C.*, 96 S.W.3d at 266. However, when a parent's rights have been terminated based on multiple predicate grounds, including subsections D or E, we must address any sufficiency challenges directed at subsections D and/or E, even if the evidence is sufficient to support termination on other predicate grounds. *See In re Z.M.M.*, 2019 WL 2147266 at *2; *In re N.G.*, 2019 WL 2147263 at *3.

In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. *See In re J.F.C.*, 96 S.W.3d at 266. We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact

finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

### *Section 161.001(b)(1)(K)*

We begin by addressing Issue Three which pertains to termination of Wanda's parental rights based on Section 161.001(b)(1)(K). The termination order recites that the Department proved by clear and convincing evidence that Wanda's parental rights should be terminated pursuant to subsections D, E, K, N, and O of Section 161.001(b)(1). The record reflects, however, that the Department abandoned its request for termination under Section 161.001(b)(1)(K). Consequently, we sustain Issue Three and modify the judgment by deleting the challenged finding.

### *Section 161.001(b)(1)(D) -- Endangering Environment*

In Issues One and Two, Wanda challenges termination of her parental rights pursuant to Section 161.001(b)(1)(D) and (E). Wanda does not raise any arguments related to termination of her parental rights under subsections N and O. Consequently, those unchallenged grounds are sufficient to support the termination order. *See Perez v. Texas Department of Protective and Regulatory Services*, 148 S.W.3d 427, 434 (Tex.App.--El Paso 2004, no pet.). We are nevertheless required to address the merits of the sufficiency arguments related to subsections D and E. *See In re Z.M.M.*, 2019 WL 2147266 at \*2; *In re N.G.*, 2019 WL 2147263 at \*3.

We begin by considering whether the evidence is legally and factually sufficient to support termination under Section 161.001(b)(1)(D). A parent's rights may be terminated if there is clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. *See* TEX.FAM.CODE ANN. § 161.001(b)(1)(D). Subsection D

addresses the child's surroundings and environment. *In re N.R.*, 101 S.W.3d 771, 775-76 (Tex.App.--Texarkana 2003, no pet). In this context, the child's environment refers to the suitability of the child's living conditions as well as the conduct of parents or others in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex.App.--Houston [14th Dist.] 2014, pet. denied).

A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards. *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex.App.--Houston [14th Dist.] 2017, no pet.). The relevant time frame to determine whether there is clear and convincing evidence of endangerment is before the child was removed. *Ybarra v. Texas Department of Human Services*, 869 S.W.2d 574, 577 (Tex.App.--Corpus Christi 1993, no pet.). When seeking termination under subsection D, the Department must show that the child's living conditions pose a real threat of injury or harm. *In re N.R.*, 101 S.W.3d at 776; *Ybarra*, 869 S.W.2d at 577. Conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex.App.--Houston [14th Dist.] 2005, no pet.). Evidence of criminal conduct, convictions, or imprisonment is relevant to a review of whether a parent engaged in a course of conduct that created an environment endangering to the child's well-being. *See In re S.R.*, 452 S.W.3d at 360-61; *A.S. v. Texas Department of Family & Protective Services*, 394 S.W.3d 703, 712-13 (Tex.App.--El Paso 2012, no pet.).

The evidence shows that Helen had cared for the children most of their lives because Wanda had been in and out of jail. Wanda's criminal history includes three convictions for federal felony offenses in 2010, 2011, and 2016, two of which resulted in her incarceration in prison for a total of thirty-nine months. Wanda left the children at a temporary group home in El Paso in 2015 and gave her mother power of attorney to consent to medical care for the children. Over the next two years, Wanda visited the children only sporadically and her mother acted as

the children's primary caregiver on weekends. During this two-year period, Wanda was convicted of transporting aliens in 2016 and sentenced to serve sixteen months in prison followed by supervised release for two years. Because Wanda violated the terms of her supervised release, she was ordered to spend an additional ninety days at the halfway house. When Helen became unable to care for the children in 2017, Wanda refused to accept responsibility for her children and it became necessary for the Department to take custody of them.

During Wanda's incarceration, the children were cared for by Helen or by the Lee Moor Children's Home. There is no evidence that the children's living conditions posed a real threat of injury or harm to them. While the evidence supports termination of Wanda's parental rights on other grounds, we conclude that the evidence is legally insufficient for a reasonable trier of fact to form a firm belief or conviction that Wanda knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being. Issue One is sustained. It is unnecessary to address Wanda's factual sufficiency challenge directed at the subsection D finding.

*Endangering Conduct -- Section 161.001(b)(1)(E)*

In Issue Two, Wanda contends that the evidence is legally and factually insufficient to support termination of her parental rights under Section 161.001(b)(1)(E). The term "conduct," as used in Section 161.001(b)(1)(E), includes both the parent's actions and failures to act. *In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex.App.--San Antonio 2000, pet. denied). Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *See A.S. v. Texas Department of Family and Protective Services*, 394 S.W.3d

703, 712 (Tex.App.--El Paso 2012, no pet.); *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex.App.--Fort Worth 2009, no pet.).

Under Section 161.001(b)(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex.App.--Fort Worth 2003, no pet.). Termination under this subsection must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id.* When determining whether a parent has engaged in an endangering course of conduct, a fact finder may consider the parent's actions and inactions that occurred both before and after the child was born. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.--El Paso 2015, no pet.); *In re S.M.*, 389 S.W.3d 483, 491-92 (Tex. App.--El Paso 2012, no pet.). The conduct need not occur in the child's presence, and it may occur both before and after the child has been removed by the Department. *Walker v. Texas Department of Family & Protective Services*, 312 S.W.3d 608, 617 (Tex.App.--Houston [1st Dist.] 2009, pet. denied). Scienter is not required for an appellant's own acts under Section 161.001(b)(1)(E), although it is required when a parent places her child with others who engage in endangering acts. *In re U.P.*, 105 S.W.3d 222, 236 (Tex.App.--Houston [14th Dist.] 2003, pet. denied).

Conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re R.A.G.*, 545 S.W.3d 645, 651 (Tex.App.--El Paso 2017, no pet.); *Jordan v. Dossey*, 325 S.W.3d 700, 723 (Tex.App.--Houston [1st Dist.] 2010, pet. denied); *In re R.W.*, 129 S.W.3d 732, 739 (Tex.App.–Fort Worth 2004, pet. denied). The commission of criminal conduct by a parent may support termination under Section

161.001(b)(1)(E) because it exposes the child to the possibility that the parent may be imprisoned. *In re R.A.G.*, 545 S.W.3d at 651; *In re M.C.*, 482 S.W.3d 675, 685 (Tex.App.--Texarkana 2016, pet. denied); *In re A.W.T.*, 61 S.W.3d 87, 89 (Tex.App.--Amarillo 2001, no pet.)(intentional criminal activity which exposes the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of the child). While criminal violations and incarceration are not enough to show endangerment by themselves, they can be evidence of endangerment if shown to be part of a course of conduct that is endangering to the child. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533-34 (Tex. 1987); *Perez v. Texas Department of Protective and Regulatory Services*, 148 S.W.3d 427, 436 (Tex.App.--El Paso 2004, no pet.). Likewise, a fact finder may infer that a parent's lack of contact with the child and absence from the child's life endangered the child's emotional well-being. *In re R.A.G.*, 545 S.W.3d at 652; *In re U.P.*, 105 S.W.3d 222, 236 (Tex.App.--Houston [14th Dist.] 2003, pet. denied).

When a parent is incarcerated, she is absent from the child's daily life and is unable to provide support. *See In re S.M.L.*, 171 S.W.3d 472, 479 (Tex.App.--Houston [14th Dist.] 2005, no pet.). An environment which routinely subjects a child to the probability that he will be left alone because his parent is incarcerated endangers both the physical and emotional well-being of a child. *In re C.L.C.*, 119 S.W.3d 382, 393 (Tex.App.--Tyler 2003, no pet.); *In re S.D.*, 980 S.W.2d 758, 763 (Tex.App.--San Antonio 1998, pet. denied). Conduct that results in such a disability, and that subjects a child to a life of uncertainty and instability, endangers the child's physical or emotional well-being. *Id*.

We have already detailed the evidence showing Wanda refused to accept parental responsibility for the children and repeatedly committed criminal offenses which caused her to

become incarcerated. There is also evidence in the record that Wanda did not complete most of the services required by her service plan. While Wanda completed the general parenting classes, she stopped attending her other services when she absconded from custody. Based on the evidence, the trial could have formed a firm conviction or belief that Wanda's failure to accept parental responsibility, repeated commission of criminal acts resulting in her incarceration and absence from the children's lives, and her failure to complete the required services constitutes a course of conduct which endangered the physical or emotional well-being of her four children. *See In re F.H.*, No. 14-18-00209-CV, 2018 WL 3977931, at *6 (Tex.App.--Houston [14th Dist.] August 16, 2018, no pet.)(holding father's incarceration, criminal history, and drug use, along with absence from child's life, created a course of conduct from which the fact finder could have determined father endangered daughter's emotional and physical well-being). Having found that the evidence is both legally and factually sufficient to support termination under subsection E, we overrule Issue Two.

## BEST INTEREST

In Issue Four, Wanda contends that the evidence is legally and factually insufficient to support the best interest finding made under Section 161.001(b)(2) of the Family Code.

### Standard of Review

When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002); *see In re J.O.A.,* 283 S.W.3d 336, 344 (Tex. 2009). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that

finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *In the Interest of J.P.B.*, 180 S.W.3d at 573. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *In re J.P.B.*, 180 S.W.3d at 573; *In re J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. *See In re J.F.C.*, 96 S.W.3d at 266. We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

### The Holley Factors

A determination of best interest necessitates a focus on the child, not the parent. *See In the Interest of B.C.S.*, 479 S.W.3d 918, 927 (Tex.App.--El Paso 2015, no pet.); *In the Interest of R.F.*, 115 S.W.3d 804, 812 (Tex.App.--Dallas 2003, no pet.). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re B.C.S.*, 479 S.W.3d at 927. Several factors must be considered in our analysis of the best interest issue: the child's desires; the child's emotional and physical needs now and in the future; the emotional and physical danger to the child now and in the future; the parenting abilities of the individuals seeking custody; the programs available to assist those individuals to promote the child's best

interest; the plans for the child by those individuals or the agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976)("the *Holley* factors"). We also must bear in mind that permanence is of paramount importance in considering a child's present and future needs. *In re B.C.S.*, 479 S.W.3d at 927.

We begin by examining the legal sufficiency of the evidence supporting the best interest finding. The first factor is the desires of the children. At the time of trial, I.D.G. was twelve-years-old, V.A.G. was eleven-years-old, E.R.G., was ten-years-old, and R.J.G. was nine-years-old. According to the caseworker, Iliana Ladd, the children are disappointed and upset with mother, and are sad because they want their mother. I.D.G. asked the caseworker why Wanda had them if she was not going to care for them. I.D.G. also stated that she knew her mother was doing drugs and having relationships with men. There is no evidence that the children are mature enough to express a preference as to their placement. *In re A.R.*, 236 S.W.3d 460, 480 (Tex.App.--Dallas 2007, no pet.)(op. on reh'g)(a child's preference should not be considered absent a showing of sufficient maturity). Further, evidence that the children "want their mother" does not necessarily mean that it is the children's desire to be placed with mother.

Evidence that a child is well-cared for by the foster family, is bonded to the foster family, and has spent minimal time in the presence of a parent is relevant to the best interest determination under the desires of the child factor. *See In re R.A.G.*, 545 S.W.3d 645, 653 (Tex.App.--El Paso 2017, no pet.); *In re U.P.*, 105 S.W.3d 222, 230 (Tex.App.--Houston [14th Dist.] 2003, pet. denied). The overwhelming evidence shows that Wanda has not been involved in the children's lives for several years and she had only twelve visits with them during the

pendency of the termination case. The three younger children have been in their current placement since March 2018. They are doing well, participate in family activities, and crave their foster parents' attention. The foster parents plan to adopt them and they are open to fostering I.D.G. if they are able to resolve a foster home licensing issue.[4] I.D.G. was placed with a new foster family on the day of the final hearing. Given Wanda's lack of involvement in the children's lives for several years, we conclude that the first factor weighs in favor of the trial court's best interest finding. The next two factors are the children's emotional and physical needs now and in the future, and the emotional and physical danger to the children now and in the future. The youngest child, R.J.G., has behavioral issues which require treatment with medication and therapy. I.D.G. has also received counseling for sexual abuse. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re R.A.G.*, 545 S.W.3d at 653; *In re U.P.*, 105 S.W.3d at 230. The trial court found that Wanda engaged in conduct endangering to the children. Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *See A.S. v. Texas Department of Family and Protective Services*, 394 S.W.3d 703, 712 (Tex.App.--El Paso 2012, no pet.); *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex.App.--Fort Worth 2009, no pet.). Further, a fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re R.A.G.*, 545 S.W.3d at 653; *In re D.L.N.*, 958 S.W.2d 934, 934 (Tex.App.--Waco 1997, pet. denied). Intentional criminal activity that exposes a parent to incarceration is conduct that endangers the physical and emotional well-being of a child. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). From the time the children were quite young, Wanda repeatedly violated

---

[4] The caseworker testified that the foster parents would be required to obtain a group home license before I.D.G. could be placed with them.

federal law resulting in her incarceration, and she was arrested for a new offense just weeks before the final hearing.  Based on the evidence, the trial court could have determined that Wanda would continue to endanger the children in the future by her criminal conduct and abandonment of the children.  The second and third factors weigh heavily in support of the best interest finding.

The fourth factor is the parenting abilities of the individuals seeking custody.  In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children.  *D.O. v. Texas Department of Human Services*, 851 S.W.2d 351, 356 (Tex.App.--Austin 1993, no writ), *disapproved of on other grounds by In re J.F.C.,* 96 S.W.3d 256 (Tex. 2002).  The evidence supports a conclusion that Wanda has poor parenting skills and an inability to care for her children or provide for their basic needs.  This factor weighs in favor of the best interest finding.

The fifth factor examines the programs available to assist those individuals to promote the child's best interest.  Wanda completed the general parenting classes, but she failed to take parenting classes aimed at teaching her parenting skills appropriate for the age of her children as required by her service plan.  The trial court could infer from Wanda's failure to take the initiative to utilize the available programs that she would not have the ability to motivate herself in the future.  *See In re W.E.C.*, 110 S.W.3d 231, 245 (Tex.App.--Fort Worth 2003, no pet.).  The fifth factor supports the best interest finding.

We will consider the sixth and seventh factors together.  The sixth factor examines the plans for the child by those individuals or the agency seeking custody.  The seventh factor is the stability of the home or proposed placement.  The fact finder may compare the parent's and the Department's plans for the children and determine whether the plans and expectations of each

party are realistic or weak and ill-defined. *D.O.*, 851 S.W.2d at 356. The Department's plan is for the three younger children to remain in their current placement and to be adopted by the foster parents. It is possible that I.D.G. will also be placed with her siblings if the foster parents are able to become licensed as a group home. Wanda did not testify at trial or offer any evidence of her own plan for the children. The trial court could have determined that the foster parents will continue to provide the children with a safe and stable home. The sixth and seventh factors weigh in favor of the best interest finding.

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. Wanda abandoned the children and endangered them by repeatedly violating federal law which resulted in her incarceration. As a result, she could not provide the stability and permanence needed by the children. Based on this evidence, the trial court could have found that the existing parent-child relationship between Wanda and the children is not a proper one. The eighth factor supports the best interest finding.

Finally, the ninth factor is whether there is any excuse for the parent's acts or omissions. Wanda's brief does not address this factor or offer any excuse for her conduct.

After considering the evidence related to the *Holley* factors, the trial court could have reached a firm conviction that termination of Wanda's parental rights is in the best interest of her children. We conclude that the evidence supporting the best interest finding is supported by both legally and factually sufficient evidence. Issue Four is overruled.

Having sustained Issues One and Three, we modify the judgment by deleting the trial court's findings that Wanda's parental rights should be terminated pursuant to Section 161.001(b)(1)(D) and (K). Having overruled Issues Two and Four, we affirm the order terminating Wanda's parental rights to I.D.G., V.A.G., E.R.G., and R.J.G. as so modified.

July 30, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.