In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00315-CV
_____

IN THE INTEREST OF S.D.T.

On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CV1812848

**MEMORANDUM OPINION**

J.C. appeals the trial court's order terminating her parental rights. In four issues, J.C. challenges the legal and factual sufficiency of the evidence supporting the best interest finding, as well as the termination grounds specified in section 161.001(b)(1)(E), (N), and (O). *See* Tex. Fam. Code Ann. § 161.001(b) (1)(E), (N), (O), (2). We affirm the trial court's judgment terminating J.C.'s parental rights.

BACKGROUND

In January 2018, the Department of Family and Protective Services ("the Department") filed a petition seeking termination of J.C.'s parental rights to S.D.T.

1

The trial court conducted a bench trial on the Department's petition. Samantha Sonnier, an investigator with the Department, explained that when the case was assigned to her, J.C. was in the hospital having a baby, and the Department was concerned because J.C. was incarcerated, had a past case with the Department, and a history of drug abuse. Sonnier testified that due to J.C.'s incarceration and past positive drug tests, the baby, S.D.T., was removed at the hospital. S.D.T.'s father ("Father") was in jail when S.D.T. was born, so the Department placed S.D.T. with Father's mother ("Grandmother").

J.C. testified that she is currently on parole, and she has been living at a women's center since her release from prison four months prior to trial. J.C. explained that she was in custody when S.D.T. was born in November 2017, and she served time in prison from January 2018 until April 2019 for the offense of possession of a controlled substance, which she committed in May 2016. J.C. testified that her sixteen-year-old daughter ("Daughter"), who had been part of a prior case with the Department, was living with J.C. at the center, where they shared a bedroom in a home with another lady. J.C. testified that if she got S.D.T. back, she and Daughter would move to another bedroom that had a nursery and a bathroom. According to J.C., her rights to Daughter were never terminated in the prior case, and J.C. had filed paperwork seeking to regain full custody of Daughter.

2

J.C. testified that she was working more than forty hours per week. J.C. explained that she meets with her parole officer weekly and submits to a drug test. J.C. explained that she used methamphetamines for the first three months that she was pregnant with S.D.T., and J.C. checked herself into rehabilitation when she found out that she was pregnant. J.C. admitted to using methamphetamine with Father once after S.D.T.'s birth, and J.C. claimed that she had not used drugs since December 2017.

J.C. testified that she received a family service plan and she took a parenting class, life skills class, and participated in a drug program, and J.C. understood that to get S.D.T. back, she needed to be stable and drug free and have a job, house, and transportation. J.C. testified that she was incarcerated for fifteen months, and during that period, she had three visits with S.D.T. According to J.C., she has seen S.D.T. twice since being released from prison. J.C. testified that she wanted a chance to raise S.D.T., and she testified that she is drug-free and has transportation, housing, and a job. J.C. also testified the she attends NA and AA three times per week and sees a counselor twice a month. According to J.C., she has completed her service plan to the best of her ability.

Debra Carr testified that she is employed at the facility where J.C. resides, and Carr explained that J.C. has received certificates in parenting, budgeting, and anger

management. Carr testified that J.C. is employed, attends "NA-type meetings" three to four times per week, and J.C. is subject to random drug tests. According to Carr, the home where J.C. lives is appropriate for a family, and the Department has recommended the facility to other women with children. Carr explained that Daughter has lived at the facility for about two months and appears to have a good relationship with J.C. According to Carr, J.C. has transportation and funding for daycare, and Carr has no concerns about S.D.T. being placed at the facility with J.C. Carr testified that if she had any concerns about S.D.T., she would call the Department.

Father testified that the last time he used methamphetamine with J.C. was after S.D.T. was born. Father testified that he saw J.C. smoke a small amount of methamphetamine once or twice while she was pregnant with S.D.T. Grandmother testified that S.D.T. was placed with her for eighteen months and that S.D.T. has been in his current placement for approximately four months. Grandmother testified that she did not believe Father or J.C. could provide a stable home for S.D.T., and she felt that it was in S.D.T.'s best interest to stay in his current placement. Grandmother testified that Father and J.C. should have access to S.D.T. in his current placement, and termination of J.C.'s parental rights was not in S.D.T.'s best interest.

4

Meredith Ruby, a caseworker with the Department, testified that when she took over S.D.T.'s case, J.C. was still incarcerated. Ruby testified that after J.C. was released from prison, J.C. gave her certificates from the classes J.C. completed in prison, and Ruby visited J.C. at the facility and discussed the service plan with J.C. Ruby described the facility as being "somewhat like a halfway house[,]" and Ruby testified that she did not believe that it was a safe and stable home for S.D.T. Ruby explained that she examined the documents from the Department's prior case involving Daughter, and Ruby testified that she was concerned that J.C. has a history of getting clean while dealing with her criminal cases and then reverting to drug use. Ruby testified that J.C. had only been out of prison for a short time, and Ruby had concerns about whether J.C. could live independently without reverting to her old ways.

Ruby testified that S.D.T. was in his current placement because he was removed from Grandmother's home after Grandmother allowed Father to have unsupervised visitation with S.D.T. According to Ruby, she discussed with Grandmother numerous times that because she was a licensed foster home, there could be no unsupervised visitation, and due to Father's criminal record, he was not allowed on the property. Ruby testified that S.D.T. was progressing at his current placement and that it was in S.D.T.'s best interest to remain there. Ruby further

5

testified that termination of J.C.'s parental rights is in S.D.T.'s best interest so he can be adopted.

Lanelda Vansau, the CASA volunteer assigned to the case, testified that she has had S.D.T.'s case for over a year. Vansau testified that S.D.T. is a happy, well-adjusted child who is progressing well in his current placement. Vansau explained that while she has not individually visited with J.C., she visited the home where J.C. is currently residing and observed J.C. during a supervised visit with S.D.T. Vansau testified that while the facility was fine for J.C., it was not in S.D.T.'s best interest to be there. Vansau testified that termination of J.C.'s parental rights and adoption by his foster parents would be in S.D.T.'s best interest.

A.L., S.D.T.'s foster father, testified that S.D.T. had been living with him and his wife for approximately four months. A.L. testified that S.D.T. would be two years old in about three months and that his wife was due to have their first child in a little over four months. A.L. explained that S.D.T. was doing well and had grown attached to A.L. and his wife. A.L. testified that he and his wife were willing to adopt S.D.T. and allow S.D.T. to remain in contact with his older sister. A.L. explained that he and his wife wanted to adopt S.D.T. and give him normalcy, and if parental rights were not terminated, then it would not be best for S.D.T. to remain in their home.

6

The trial court found that clear and convincing evidence supported three predicate statutory grounds for terminating J.C.'s parental rights and that termination of J.C.'s parental rights was in S.D.T.'s best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E), (N), (O), (2). J.C. appealed.

## ISSUES ONE, TWO, THREE, AND FOUR

In issue one, J.C. contends that the evidence was legally and factually insufficient to support termination of her parental rights under section 161.001(b)(1)(E) of the Family Code. *See id.* § 161.001(b)(1)(E). In issue two, J.C. challenges the legal and factual sufficiency of the evidence under section 161.001(b)(1)(N), and in issue three, she challenges the legal and factual sufficiency of the evidence under section 161.001(b)(1)(O). *See id.* § 161.001(b)(1)(N), (O). In issue four, J.C. contends that the evidence was legally and factually insufficient to demonstrate that termination of her parental rights is in S.D.T.'s best interest. *See id.* § 161.001(b)(2). We address issues one, two, three, and four together.

Under legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all

7

evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id.*

Under factual sufficiency review, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id.*

The decision to terminate parental rights must be supported by clear and convincing evidence, *i.e.*, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001; *see also In the Interest of J.L.*, 163

S.W.3d at 84. We will affirm a judgment if any one of the grounds is supported by legally and factually sufficient evidence and the best interest finding is also supported by legally and factually sufficient evidence. *In the Interest of C.A.C., Jr.*, No. 09-10-00477-CV, 2011 WL 1744139, at *1 (Tex. App.—Beaumont May 5, 2011, no pet.) (mem. op.). However, when, as here, a parent challenges a trial court's findings under section 161.001(b)(1)(D) or (E), we must review the sufficiency of those grounds as a matter of due process and due course of law. *In the Interest of N.G.*, 577 S.W.3d 230, 235 (Tex. 2019).

Section 161.001(b)(1)(E) allows for termination if the trier of fact finds by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(E). For purposes of subsection (E), endangerment means exposing the child to loss or injury or to jeopardize a child's emotional or physical health. *Id.*; *In the Interest of M.L.L.*, 573 S.W.3d 353, 363-64 (Tex. App.—El Paso 2019, no pet.). Termination under subsection (E) must be based on more than a single act or omission and requires a voluntary, deliberate, and conscious course of conduct by the parent. *In the Interest of M.L.L.*, 573 S.W.3d at 363-64. A parent's conduct that subjects a child's life to instability and uncertainty endangers the emotional or physical well-

9

being of a child. *Id.* at 363. Endangerment is not limited to actions directed toward the child and includes the parent's actions before the child's birth and while the parent had custody of older children, including evidence of drug usage. *In the Interest of J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

"[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *Id.* A mother's use of drugs during pregnancy may constitute conduct that endangers the physical and emotional well-being of a child. *Cervantes-Peterson v. Tex. Dept. of Family & Protective Servs.*, 221 S.W.3d 244, 253 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Scienter is not required for a parent's own acts under subsection (E). *In the Interest of U.P.*, 105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Courts may also consider whether a parent's drug use continues after the child is removed from the parent's care, as such conduct shows a voluntary, deliberate, and conscious course of conduct, which, by its nature, endangers a child's well-being. *In the Interest of J.S.*, 584 S.W.3d 622, 635 (Tex. App.— Houston [1st Dist.] 2019, no pet.); *see In the Interest of M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.— Fort Worth 2011, pet. denied).

Evidence of criminal conduct, conviction, and imprisonment may support a finding of endangerment under subsection (E). *In the Interest of E.R.W.*, 528 S.W.3d

10

251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.). When a parent is incarcerated, her conduct subjects a child's life to uncertainty and instability, and a factfinder may infer that a parent's lack of contact with a child and absence from a child's life endangered the child's emotional well-being. *In the Interest of I.D.G.*, 579 S.W.3d 842, 851-52 (Tex. App.—El Paso 2019, pet. denied). "The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent." *In the Interest of M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.).

The trial judge heard evidence that J.C. (1) had a history of drug use and a past case with the Department; (2) used methamphetamines for the first three months that she was pregnant with S.D.T.; (3) was incarcerated when she gave birth to S.D.T., and (4) used methamphetamine shortly after S.D.T.'s birth and during the short period she was not incarcerated. The trial judge also heard evidence that Grandmother cared for S.D.T. for the first eighteen months of his life, and during that time, J.C. was incarcerated for fifteen months and only had three visits with S.D.T. The trial court heard testimony that J.C. had been out of prison for four months, was staying in a facility with a controlled environment, and was trying to regain custody of Daughter, who was the subject of a prior case with the Department.

Additionally, the trial judge also heard evidence that J.C. had only seen S.D.T. twice since being released from prison.

Viewing the evidence in the light most favorable to the trial judge's findings, we conclude that the trial judge could reasonably have formed a firm belief or conviction that J.C engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E); *see also In the Interest of J.O.A.*, 283 S.W.3d at 345; *In the Interest of J.F.C.*, 96 S.W.3d at 266; *In the Interest of J.S.*, 584 S.W.3d at 635; *In the Interest of I.D.G.*, 579 S.W.3d at 851-52; *Cervantes-Peterson*, 221 S.W.3d at 253.

When determining the child's best interest, we consider a non-exhaustive list of factors: (1) the desires of the child; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the child; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72

(Tex. 1976); *see* Tex. Fam. Code Ann. § 263.307(b). No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest. *See In the Interest of A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *See In the Interest of N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

With respect to the child's best interest, the trial judge heard evidence that J.C. had only been out of prison for four months, was staying in a facility with a controlled environment, and that the facility was not the best place for S.D.T. The trial court heard evidence that (1) there were concerns about whether J.C. would be able to live independently without reverting to her old ways, (2) J.C. had only seen S.D.T. twice since being released from prison, (3) that S.D.T. was almost two years old and doing well in his current placement, (4) termination of J.C.'s parental rights is in the child's best interest, and (5) it was in S.D.T.'s best interest to stay in his current placement and be adopted. Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. *See* Tex. Fam. Code Ann. § 263.307(a). As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court could reasonably conclude that

13

termination of J.C.'s parental rights was in S.D.T.'s best interest. *See id.* § 161.001(b)(2), 263.307(a), (b); *see also In the Interest of J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72.

We conclude that the Department established, by clear and convincing evidence, that J.C committed the predicate acts enumerated in section 161.001(b)(1)(E) and that termination of J.C.'s parental rights is in the best interest of S.D.T. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E), (2); *In the Interest of C.A.C., Jr.*, 2011 WL 1744139, at *1. Accordingly, we overrule issues one and four. Having concluded that the evidence was legally and factually sufficient to support the trial court's findings as to subsections 161.001(b)(1)(E), and (2), we need not reach issues two and three, in which J.C challenges the sufficiency of the evidence supporting the trial court's findings under section 161.001(1)(N) and (O). *See In the Interest of N.G.*, 577 S.W.3d at 235; *In the Interest of C.A.C., Jr.*, 2011 WL 1744139, at *1; *see also* Tex. R. App. P. 47.1. We affirm the trial court's order terminating J.C.'s parental rights.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

14

Submitted on December 30, 2019
Opinion Delivered February 6, 2020

Before McKeithen, C.J., Horton and Johnson, JJ.