

**IN THE**
**TENTH COURT OF APPEALS**

### No. 10-22-00119-CV

## IN THE INTEREST OF L.S., A CHILD

**From the 361st District Court**
**Brazos County, Texas**
**Trial Court No. 21-000361-CV-361**

## MEMORANDUM  OPINION

Twytanisha appeals from a judgment that terminated her parental rights to her child, L.S.  *See* TEX. FAM. CODE ANN. §161.001.  Twytanisha complains that the evidence was legally and factually insufficient for the trial court to have found that she committed the predicate acts set forth in Section 161.001(b)(1)(D) (endangering conditions) and (E) (endangering conduct) and that the trial court improperly found that she failed to complete her service plan because she was unable to comply with the plan due to her limited mental capacity.  Because we find no reversible error, we affirm the judgment of termination.

The termination judgment lists four predicate acts upon which the termination was granted as to Twytanisha: endangering conditions (Subsection (D)); endangering conduct (Subsection (E)); constructive abandonment (Subsection N); and failure to

comply with a court-ordered service plan (Subsection (O)).  *See* TEX. FAM. CODE ANN. §

161.001(b)(1)(D), (E), (N), (O).  However, Twytanisha's issues on appeal challenge only

the endangering conditions and endangering conduct grounds and the failure to

complete her service plan, but not constructive abandonment.  By failing to challenge the

finding under Subsection (N), Twytanisha has waived any complaint about the

sufficiency of the evidence to support that finding, and therefore we do not need to

address the other predicate acts because only one ground is required to support

termination.  *See In re Z.M.M.*, 577 S.W.3d 541, 542 (Tex. 2019) (per curiam) (stating that

"only one ground is required to terminate parental rights").  We overrule issues one and

three.  Further, because Twytanisha has not challenged the trial court's best interest

finding, we affirm the judgment of termination of her parental rights.

However, the Texas Supreme Court has held that because of the potential for

future adverse consequences based on a prior termination, we are required to consider

the sufficiency of the evidence pursuant to Sections 161.001(b)(1)(D) or (E) if challenged

even if the termination is proper as to some other section, therefore, we will also address

Twytanisha's second issue relating to the sufficiency of the evidence pursuant to Section

161.001(b)(1)(E).  *In re N.G.*, 577 S.W.3d 230, 235-36 (Tex. 2019).

### STANDARD OF REVIEW

The standards of review for legal and factual sufficiency in cases involving the

termination of parental rights are well established and will not be repeated here.  *See In*

*re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25

(Tex. 2002) (factual sufficiency); *see also In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009).

**SECTION 161.001(b)(1)(E)**

In her second issue, Twytanisha complains that the evidence was legally and factually insufficient for the trial court to have found that she committed the predicate act in Section 161.001(b)(1)(E), which allows termination of parental rights if the trial court finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). "Endanger" means "to expose a child to loss or injury, or to jeopardize a child's emotional or mental health." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). An endangerment finding often involves physical endangerment, but it is not necessary to show that the parent's conduct was directed at the child or that the child suffered actual injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). "Rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone." *Id*. In our endangerment analysis pursuant to Section 161.001(b)(1)(E), we may consider conduct both before and after the Department removed the children from their parent. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Twytanisha argues that scienter is required for a finding of endangering conduct pursuant to Section 161.001(b)(1)(E), and that because of her mental health and below average intellectual functioning issues, the evidence was insufficient to show that she knowingly endangered L.S. However, "[s]cienter is not required for an appellant's own

acts [to constitute endangerment] under [S]ection 161.001(b)(1)(E)."[1]  *In re I.D.G.*, 579 S.W.3d 842, 851 (Tex. App.—El Paso 2019, pet. denied) (op. on reh'g).

Twytanisha further argues that there was insufficient evidence to show that she endangered L.S. because there was only testimony of allegations in a report that led to the removal of L.S. and that there were missed drug tests although drug use was not a substantial concern of the Department and Twytanisha had never tested positive for drugs.  The Department disagrees with Twytanisha's assessment of the evidence and argues that the evidence of endangering conduct included that Twytanisha:  (1) was unstable, unemployed, homeless, and unable to provide for L.S.'s basic needs, resulting in the child's removal; (2) remained unemployed and unstable throughout the case while the child remained in foster care; (3) engaged in conduct resulting in her incarceration during the case and at the time of trial; (4) failed to complete her service plan, including therapy or drug tests—her therapist discharged her and said she failed to make any progress; (5) had significant mental health issues that she failed to address or treat; (6) made inappropriate comments to L.S. during visits that had a negative emotional impact on the child; and (7) inconsistently participated in visitation with the child, resulting in actual emotional harm for the child.

A parent's mental instability may contribute to a finding that the parent engaged in a course of conduct that endangered a child's physical or emotional well-being.  *In re*

---

[1] Because the issue of scienter of a third party is not relevant to this appeal because there was no suggestion or argument by the department that the mother's rights were terminated based on the conduct of a third party with whom the mother left L.S., we do not address the issue of scienter with regard to the conduct of a third person pursuant to Section 161.001(b)(1)(E).

*T.G.R.-M.*, 404 S.W.3d 7, 14 (Tex. App.—Houston [1st Dist.] 2013, no pet.). In determining whether a parent endangered the child's physical and emotional well-being due to mental instability, the factfinder may consider evidence of a parent's failure to comply with services to improve her mental health. *In re S.R.*, 452 S.W.3d 351, 365 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Although, standing alone, evidence of incarceration is insufficient to support an endangering-conduct finding, it can be properly considered on the issue of endangering conduct and is relevant to prove a parent's overall instability. *See In re J.F.-G.*, 627 S.W.3d 304, 312-15 (Tex. 2021) (reaffirming that a parent's criminal history and imprisonment are factors when considering endangering conduct although the mere fact of a conviction or sentence of incarceration, standing alone, will not support termination under Subsection (E)).

A parent's failure to regularly participate in visitation can reasonably be found to be emotionally endangering to the child's well-being. *In re A.F.*, No, 07-19-00435-CV, 2020 WL 2786940, at *7 (Tex. App.—Amarillo May 29, 2020, no pet. h) (mem. op.). In general, a parent's conduct that subjects children to a life of uncertainty and instability endangers the physical and emotional well-being of those children. *Boyd*, 727 S.W.2d at 531.

L.S. was three years old at the time of her removal and was initially removed from her mother because of two referrals that Twytanisha and L.S. were basically homeless, having moved from place to place, an allegation that L.S. had not eaten for over a week,

and that Twytanisha's mental instability was resulting in verbal and physical altercations that L.S. was believed to have seen. After the removal, the department began providing services to Twytanisha, although her participation was sporadic. When her psychological evaluation was completed, Twytanisha was provisionally diagnosed with paranoid schizophrenia and the evaluation showed that she was at high risk for child abuse even with a significantly heightened level of attempting to present herself in a positive light in the testing. Her IQ was 81, which was below average. The doctor who performed the evaluation was unable to complete the evaluation due to Twytanisha's inability to focus, lower intellectual functioning, and her tendency to enter a trance-like state during the part that he did complete. The doctor recommended that Twytanisha be evaluated by MHMR and a psychiatrist for her mental health issues, aggression control classes, protective parenting classes, and drug treatment. He recommended that the classes be done in a manner to ensure Twytanisha's comprehension. Twytanisha refused to go to MHMR and did not complete any of the doctor's recommendations. She participated in therapy for a while but was ultimately discharged for non-attendance.

Twytanisha participated in visitation with L.S. and her other infant child, but those visits were not regular because Twytanisha would be late or not attend at all. At one visit, Twytanisha told L.S. that she should leave her foster home because it was unsafe, which led to L.S. attempting to leave. Between Twytanisha's inconsistent attendance at visits, even after the visits were switched to virtual visits rather than in person, and her interactions with L.S. when the visits did take place either in person or virtually, L.S.'s

emotional health and overall behavior began deteriorating significantly and she began acting out sexually and emotionally to such a degree that her foster parents requested that she be moved. L.S. had started therapy to address these issues prior to the trial. Twytanisha did not believe that she had behaved inappropriately or that there were any issues with the visits.

Twytanisha had been arrested and was in jail during the pendency of the proceedings through the trial because, in her words, she "made a stupid mistake" and "decided to be greedy." She testified that she would be in jail for six months. During the proceedings, Twytanisha had not established a stable home or employment, and had not completed even a moderate part of her service plan at the time of the trial.

Upon our review of the record under the appropriate standards for determining the legal and factual sufficiency of the evidence, we find that the evidence was legally and factually sufficient for the trial court to have found that Twytanisha engaged in conduct that endangered the physical and emotional well-being of the child pursuant to Section 161.001(b)(1)(E). We overrule issue two.

**CONCLUSION**

Having found no reversible error, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Smith
Affirmed
Opinion delivered and filed August 24, 2022
[CV06]

