# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00435-CV

---

**J. M., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE 146TH DISTRICT COURT OF BELL COUNTY**
**NO. 321,340-B, THE HONORABLE JACK WELDON JONES, JUDGE PRESIDING**

---

### C O N C U R R I N G   O P I N I O N

The Court concludes that there is sufficient evidence to support the (D) and (E) statutory grounds for termination of Father's parental rights. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E). I cannot join the majority opinion because I disagree that the evidence is sufficient to support termination under (D). Because I agree that the evidence is sufficient to support termination under (E), however, I concur in the judgment affirming the termination of Father's parental rights.

Subsection (D) authorizes termination of parental rights if clear and convincing evidence establishes that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." *Id.* § 161.001(b)(1)(D). Subsection (E) authorizes termination of parental rights if clear and convincing evidence establishes that the parent "engaged in conduct or knowingly placed the

child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id.* § 161.001(b)(1)(E). Although both grounds require proof of endangerment, they are otherwise separate and distinct grounds. *See A.S. v. Tex. Dep't of Fam. & Protective Servs.*, 394 S.W.3d 703, 713 (Tex. App.—El Paso 2012, no pet.); *In re S.H.A.*, 728 S.W.2d 73, 85 (Tex. App.—Dallas 1987, writ ref'd n.r.e.); *see also In re J.K.N.G.*, No. 04-21-00310-CV, 2022 WL 689095, at *5 (Tex. App.—San Antonio Mar. 9, 2022, pet. denied) (mem. op.). The primary distinction between subsections (D) and (E) is the cause of the endangerment to the child's physical or emotional well-being. *S.H.A.*, 728 S.W.2d at 85. Under subsection (D), the focus is on "conditions or surroundings" that endanger the child, while under subsection (E), the focus is on "conduct" that endangers the child. *Id.*; *see also In re J.A.J.*, 225 S.W.3d 621, 626 n.7 (Tex. App.—Houston [14th Dist.] 2006) ("[A]bsent a notable history of abuse or a specific instance which clearly endangers a child, we should be careful to maintain the critical distinction between 'conditions or surroundings' required under subsection (D) and 'conduct' required under subsection (E)."), *rev'd in part on other grounds*, 243 S.W.3d 611 (Tex. 2007).

Also, subsection (D) always requires proof of scienter, i.e., evidence that a parent "knowingly" placed or "knowingly" allowed his child to remain in endangering conditions or surroundings. *See In re T.H.*, 131 S.W.3d 598, 603 (Tex. App.—Texarkana 2004, pet. denied); *cf. In re I.D.G.*, 579 S.W.3d 842, 851 (Tex. App.—El Paso 2019, pet. denied) ("Scienter is not required for an appellant's own acts under Section 161.001(b)(1)(E), although it is required when a parent places her child with others who engage in endangering acts."). "Subsection D is not a basis for terminating parental rights if the parent was unaware of the endangering environment." *In re A.L.H.*, 468 S.W.3d 738, 746 (Tex. App.—Houston [14th Dist.] 2015, no pet.). "So, in

2

scrutinizing the endangerment finding, we focus not only on evidence of endangerment but also on evidence showing the parent's awareness of the endangering environment." *In re J.E.M.M.*, 532 S.W.3d 874, 881 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Additionally, "[s]ubsection (D) primarily considers the environment as it existed at the time the child was removed, while the relevant time period for subsection (E) is wider and considers parental conduct occurring 'both before and after the child has been removed by the Department.'" *D.N.-B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00092-CV, 2020 WL 4462327, at *2 (Tex. App.—Austin July 24, 2020, pet. denied) (mem. op.) (internal citations omitted). Thus, we must limit our analysis under subsection (D) to the evidence of what Father knew at the time of Child's removal.

In this case, Father was sixteen years old when Child was born and seventeen years old when Child was removed from Mother's care. According to the Department's removal affidavit, Father had "limited involvement in [Child's] life and only occasionally [saw] him" at the time of removal. The Department caseworker testified that she did not believe Father and Mother were "in a relationship" at the time of removal, and she did not know whether Father was aware at that time of Mother's drug issues. The caseworker also testified that although Father knew that Mother was staying with Maternal Grandmother at the time, she did not believe that Father "knew the circumstances of her CPS case," and the caseworker added that Father "may not have known that there was an issue." Moreover, the caseworker acknowledged that at the beginning of the case, Father "didn't even know that [Child] was his."

Father testified that when the case began, he did not know that Child was his and that he had "nothing to do with" Mother running away from her home and using drugs. He

3

denied hiding Mother when she was on the run and giving her drugs. On cross-examination, Father maintained that he had no knowledge of Mother's drug use:

Q. Sir, did you ever see [Mother] use cocaine or marijuana?

A. Uhm, I ain't never seen her do none of that.

Q. Did you know that she was using cocaine and marijuana?

A. No.

Q. Did you ever use methamphetamine with [Mother]?

A. No.

Q. Were you aware that when your child came into the care of the Department he tested positive for cocaine?

A. I didn't know that until that day you had came to visit me at my house and told me.

Q. But you never saw [Mother] doing cocaine?

A. No.

Q. Is that because you didn't see [Mother] until after this case began?

A. Yes. Because it was kind of family issues going on from her side and towards me, so, like, a lot going on.

Father explained that Mother's family did not want him around and that as a result, he did not have much contact with either Mother or Child after Child was born. If he wanted to see them,

he would have to "sneak over" to Mother's house late at night, "at, like, 3:00 something in the morning or something like that" and then leave "in the morning time."

I cannot conclude that this evidence is sufficient to prove that Father knowingly placed or knowingly allowed Child to remain in conditions or surroundings which endangered Child's physical or emotional well-being, and I believe the Court errs by concluding otherwise. As Father argues in his brief, although Child's "conditions or surroundings may have been dangerous, [Father] did not know that, did not place [Child] in those circumstances, and did not knowingly allow [Child] to remain in those circumstances."

Nevertheless, Section 161.001 requires proof of only one statutory predicate ground to support termination, *see In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003), and I agree with the Court that the evidence is sufficient to prove that Father engaged in conduct that endangered Child, *see* Tex. Fam. Code § 161.001(b)(1)(E). I would affirm the district court's judgment terminating Father's parental rights on that ground alone. Accordingly, I concur only in the Court's judgment.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne and Justices Triana and Smith

Filed: January 17, 2023

5