In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-21-00078-CV
IN THE INTEREST OF K.F. AND K.F.

**On Appeal from the 279th District Court**
**Jefferson County, Texas**
**Trial Cause No. F-230,235-A**

## MEMORANDUM OPINION

The trial court terminated the parental rights of D.F. and K.T. to their children K.F. ("Kari") and K.F. ("Kate").[1] In separate briefs submitted in this appeal, D.F. and K.T. challenge the legal and factual sufficiency of the evidence supporting the best-interest finding and the termination grounds specified in sections 161.001(b)(1)(D), (E), and (O). *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(D), (E),

---

[1]To preserve the privacy of the parties, we refer to the parties by their initials, the children by the fictitious names "Kari" and "Kate", and we will identify other family members based on their respective relationships to the specific child who is discussed. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

1

(O), (2). We affirm the trial court's judgment terminating D.F.'s and K.T.'s parental rights.

## Background

In February 2020, the Department of Family and Protective Services ("the Department") filed a petition seeking the termination of D.F.'s and K.T.'s parental rights to their children, Kari and Kate. In March 2021, the trial court conducted a bench trial on the Department's petition. Dashelle Reed, a Department caseworker, testified that in December 2018, the Department received a referral due to concerns about K.T.'s mental health, drug use, and criminal history, and the case was transferred to Family Based Safety Services ("F.B.S.S."). Reed testified that during F.B.S.S.'s investigation, K.T. was pregnant with Kate and tested positive for marijuana and cocaine, and D.F. was incarcerated. Reed explained that K.T. and D.F. had drug issues the entire time the Department worked with the family, and in January 2020, F.B.S.S. executed a removal affidavit. Reed testified that in February 2020, the trial court granted the Department temporary managing conservatorship of the children, and the Department placed the children with an aunt. According to Reed, the children are happy with their aunt and their needs are being met.

Reed explained that the Department developed a Family Plan of Service for K.T. and D.F., and Reed testified that she went over the family plan with K.T. Reed testified that K.T. tested positive for marijuana, cocaine, amphetamines, and

2

methamphetamines throughout the case and failed to maintain employment, provide a stable and appropriate environment to which the children could return, successfully address her anger management and mental health issues, and attend the required parenting class. Reed explained that a month prior to trial, K.T. went to an inpatient drug facility and completed the program, and Reed testified that she assumed that K.T. believed that she would get an extension on her case if she was an inpatient. According to Reed, since K.T. failed to seek treatment in a timely manner, K.T. did not have time to demonstrate whether she would be able to live a drug free life. Reed also testified that K.T. had previously completed outpatient treatment when her case was with F.B.S.S., and K.T. tested positive while she was in outpatient.

Reed testified that K.T. has been diagnosed with bipolar disorder and has a history of not addressing her mental health issues, being noncompliant with her medications, and having suicidal ideations. Reed explained that K.T. has abused her medications, self-medicated with illegal drugs, and attempted suicide on multiple occasions. Reed testified that if K.T. failed to comply with treatment and continued to use illegal drugs, K.T. would continue to have mental health issues that would affect her ability to parent her children until they are eighteen, and Reed explained that the children are young and unable to care for themselves. According to Reed, she has observed K.T. come to court "to the point where she's sleepy and barely able to form a sentence or stay focused on what's going on." Reed explained that K.T.'s

untreated mental health issues caused the children to be in conditions or surroundings which endangered their physical or emotional well-being, and if left untreated, K.T.'s mental illness would continue to place the children in harm.

Reed also testified that K.T. was still in a relationship with D.F., and since D.F.'s release from jail, the majority of K.T.'s drug tests were positive and K.T. was no longer focused on working her service plan. Reed further explained that it is in the children's best interest that K.T.'s parental rights be terminated, because the Department has been working with K.T. for approximately three years, and K.T. has not effectively worked her service plan or demonstrated the ability to change.

Reed testified that the Department has also been working with D.F. since 2018, and after D.F.'s release from jail, Reed and D.F. reviewed his individual service plan and discussed the ramifications of D.F.'s choice to be in a relationship with K.T. According to Reed, D.F. reported that he made poor decisions because his cognitive thinking was messed up. Reed testified that D.F. failed to comply with his service plan, and D.F. indicated that working the plan was not his primary goal. Reed explained that in the six months after D.F.'s release from jail, D.F. tested positive for drugs, failed to complete his psychosocial evaluation and parenting class, and failed to maintain stable housing and employment. Reed testified that in the two months prior to trial, D.F. tested positive for marijuana, methamphetamines, amphetamines, opiates, and codeine, and D.F. went to inpatient treatment and was

4

released four days before the trial began. According to Reed, there was no time to determine whether D.F.'s treatment had been effective. Reed explained that D.F. completed drug treatment twice before, and D.F. tested positive upon his release from jail. Reed further testified that D.F.'s criminal activity and drug use endangered the children's well-being, and it was in the children's best interest that D.F.'s parental rights be terminated.

K.T. testified that she is still in a relationship with D.F., and they currently live with D.F.'s mother. K.T. explained that in August 2020, Dr. Amin diagnosed her with Type 1 bipolar disorder, major depressive disorder, generalized anxiety disorder, an unspecified personality disorder, cocaine use disorder in remission, substance abuse disorder in remission, and cannabis use disorder in remission. K.T. admitted that in 2019, when her first child, Kari, was two years old, she reported that she had been off her medications since 2016 and was buying Xanax off the street. K.T. testified that after she had Kari, she started smoking marijuana, and K.T. explained that when she was three months pregnant with Kate, she stopped taking her medications and jumped out of a moving vehicle because she had taken seven Xanax. K.T. further testified that after she had Kate, she reported having auditory and visual hallucinations, but K.T. did not recall reporting that she heard voices telling her to hurt herself and others. K.T. explained that she attempted suicide seven times "before my kids and with the exception of the jumping out the car."

5

K.T. testified that after she had her children, she took her mental health medications along with methamphetamine and cocaine, and the Department gave her an opportunity to participate in F.B.S.S. to avoid having her children removed. K.T. explained that in February 2020, she went to court for a theft charge and tested positive for benzodiazepine, methamphetamine, cocaine, and marijuana. K.T. testified that she was currently on probation and had three theft convictions, one of which she committed with D.F. K.T. admitted that she had not taken her case seriously for over a year because she did not have the proper tools to work her services and "my addiction had the best of me." K.T. testified that she completed a seven-month outpatient program approximately six months before trial, and she tested positive for drugs during the program and continued to test positive after completing the program. According to K.T., she received the proper tools to deal with her problems when she attended inpatient treatment shortly before trial, and she had been compliant with her current medications for one week. K.T. admitted that she could have sought inpatient treatment earlier in her case.

K.T. explained that she had changed, but K.T. agreed that she had not demonstrated change over the past year. According to K.T., she has dealt with mental health issues for almost fifteen years and has had addiction problems for ten years, and the Department did not give her enough time to address her problems. K.T. testified that it was in the best interest of her children that her parental rights remain

6

intact so she can continue to work on her services. K.T. explained that she needed three months to get a job and find an appropriate place for her and D.F. to live with the children.

D.F. testified that he was twenty-nine years old and has a long history of drug use, and D.F. admitted that during the case, he tested positive for opiates codeine, methamphetamine, benzodiazepine, and marijuana. D.F. also admitted he was an addict and explained that he started using ecstasy when he was fourteen years old, and he was using ecstasy pills that were methamphetamine based for approximately six months prior to trial. D.F. testified that he attended an inpatient drug rehabilitation the month before trial and was diagnosed with a mental health issue and referred to treatment, and D.F. explained that he did not seek drug treatment earlier because he did not think he had a problem. D.F.'s records from the residential substance abuse treatment facility show D.F. was on parole, had been using drugs daily, and had possible mental health issues. According to D.F., he had an appointment to address his mental health issues. D.F. also testified that he has an extensive criminal history, his probation was revoked for "dirty U.A.s[,]" and he tested positive while on parole. D.F. also explained that although he has been through the Safe P Program twice, which is a six-month drug treatment program, he only attended four months of the program the second time, and D.F. believed that

7

his recent thirty-day inpatient treatment was more intensive and helped him become clean and change his life.

D.F. further testified that he had reviewed his Family Plan of Service, and D.F. explained that he is serious about changing his lifestyle. D.F. testified that he plans to stay sober and remain in a relationship with K.T., but he will separate from K.T. if she relapses. D.F. also testified that he is living at his mother's home and drawing unemployment, and D.F. explained that his mother can get him a job at a refinery when he is able to pass a hair follicle drug test. D.F. testified that he could pass a urinalysis and provide a safe and stable home for the children and requested that the trial court consider options other than termination.

Aaron Moore, the CASA volunteer, testified that he had worked on the case for approximately one year and has had monthly interactions with the children. Moore testified that his contact with K.T. has been sporadic, and K.T. has been noncompliant with her Family Plan of Service. Moore further testified that termination of K.T.'s parental rights would be in the children's best interest because K.T. has had ample time to work her services and demonstrate change. According to Moore, K.T. does not deserve more time to work her services because based on K.T.'s history, it is difficult to believe that she has suddenly changed. Moore explained that the children need consistency and a clean and sober parent to care for them daily and who is not possibly going to jail for violating their probation.

Moore also testified that D.F. has been noncompliant with his Family Plan of Service and has also had ample time to demonstrate change but failed to do so. Moore explained that D.F. knew the consequences of using drugs and violating his probation, but his freedom was not enough for him to contemplate change because he was arrested on a motion to revoke and incarcerated during the case. Moore testified that termination of D.F.'s parental rights would be in the children's best interest, because even considering D.F.'s recent sobriety, D.F. has not shown that he can provide consistency and a clean and sober lifestyle. Moore also testified that the children were in a long-term placement with relatives who were meeting the children's needs and providing a consistent and drug-free home. According to Moore, the children seemed very happy and should remain in their current placement.

The trial court found that clear and convincing evidence supported three predicate statutory grounds for terminating D.F.'s and K.T.'s parental rights and that termination of D.F.'s and K.T.'s parental rights was in the best interest of Kari and Kate. *See id.* § 161.001(b)(1)(D), (E), (O), (2). The trial court also found that clear and convincing evidence supported that K.T. has a mental or emotional illness that, in all probability, will render her unable to provide for the children's needs until the children's eighteenth birthdays. *See id.* The trial court appointed the Department as the permanent managing conservator of the children. D.F. and K.T. appealed.

Analysis

In issue one, D.F. and K.T. contend that the evidence is legally and factually insufficient to support termination of their parental rights under section 161.001(b)(1)(D) of the Family Code, and in issue two, D.F. and K.T. argue that the evidence is legally and factually insufficient to support termination under section 161.001(b)(1)(E). *See id.* § 161.001(b)(1)(D), (E). In issue three, D.F. and K.T. challenge the legal and factual sufficiency of the evidence supporting termination of their parental rights under section 161.001(b)(1)(O). *See id.* § 161.001(b)(1)(O). In issue four, D.F. and K.T. contend that the evidence is legally and factually insufficient to demonstrate that termination of their parental rights is in the best interest of Kari and Kate. *See id.* § 161.001(b)(2). We address issues one through four together.

Under legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id*. If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id*.

Under factual sufficiency review, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* (citation omitted). We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id.*

The decision to terminate parental rights must be supported by clear and convincing evidence, *i.e.*, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2); *see also In the Interest of J.L.*, 163 S.W.3d at 84. We will affirm a judgment if any one of the grounds is supported by legally and factually sufficient evidence and the best-interest finding is also supported by legally and factually sufficient evidence. *In the Interest of*

*C.A.C., Jr.*, No. 09-10-00477-CV, 2011 WL 1744139, at *1 (Tex. App.—Beaumont May 5, 2011, no pet.) (mem. op.). However, when, as here, a parent challenges a trial court's findings under section 161.001(b)(1)(D) or (E), we must review the sufficiency of those grounds as a matter of due process and due course of law. *In the Interest of N.G.*, 577 S.W.3d 230, 235 (Tex. 2019).

Section 161.001(b)(1)(D) of the Family Code allows for termination of a parent's rights if the trier of fact finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(D). Section 161.001(b)(1)(E) allows for termination if the trier of fact finds by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" *Id.* § 161.001(b)(1)(E). "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In the Interest of J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). A parent's conduct in the home can create an environment that endangers the child's physical and emotional well-being. *In the Interest of J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent." *In the*

*Interest of M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (citation omitted).

For purposes of subsection (E), endangerment means to expose the child to loss or injury or to jeopardize a child's emotional or physical health. *See id.*; *see also In the Interest of M.L.L.*, 573 S.W.3d 353, 363 (Tex. App.—El Paso 2019, no pet.). Termination under subsection (E) must be based on more than a single act or omission and requires a voluntary, deliberate, and conscious course of conduct by the parent. *Interest of M.L.L.*, 573 S.W.3d at 363-64. A parent's conduct that subjects a child's life to instability and uncertainty endangers the emotional or physical well-being of a child. *Id.* at 363. Endangerment is not limited to actions directed toward the child and includes the parent's actions before the child's birth and while the parent had custody of older children, including evidence of drug usage. *In the Interest of J.O.A.*, 283 S.W.3d at 345.

Courts may consider whether a parent's drug use continues after the child is removed from the parent's care, as such conduct shows a voluntary, deliberate, and conscious course of conduct that endangers a child's well-being. *In the Interest of J.S.*, 584 S.W.3d 622, 635 (Tex. App.— Houston [1st Dist.] 2019, no pet.); *see In the Interest of M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.— Fort Worth 2011, pet. denied). A mother's use of drugs during pregnancy may constitute conduct that endangers the physical and emotional well-being of a child. *Cervantes-Peterson v.*

13

*Tex. Dep't of Family and Protective Servs.*, 221 S.W.3d 244, 253 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Scienter is not required for a parent's own act under subsection (E). *In the Interest of U.P.*, 105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). One parent's drug-related endangerment of the child may be imputed to the other parent. *Edwards v. Tex. Dep't of Protective and Regulatory Servs.*, 946 S.W.2d 130, 138 (Tex. App.—El Paso 1997, no writ), *overruled on other grounds*, *In the Interest of J.F.C.*, 96 S.W.3d at 267.

Evidence of a parent's untreated mental illness can also expose a child to endangerment, because when a parent fails to take required medication, the parent can behave erratically and neglect the care of the child. *See In the Interest of P.H.*, 544 S.W.3d 850, 858 (Tex. App.—El Paso 2017, no pet.). Evidence of criminal conduct, conviction, and imprisonment may support a finding of endangerment under subsection (E). *In the Interest of E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.). When a parent is incarcerated, their conduct subjects a child's life to uncertainty and instability, and a factfinder may infer that a parent's lack of contact with a child and absence from a child's life endangered the child's emotional well-being. *In the Interest of I.D.G.*, 579 S.W.3d 842, 851-52 (Tex. App.—El Paso 2019, pet. denied).

Regarding the best-interest inquiry, we consider a non-exhaustive list of factors: (1) the desires of the child; (2) the child's emotional and physical needs now

and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the child's best interest; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also* Tex. Fam. Code Ann. § 263.307(b). No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in a child's best interest. *In the Interest of A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The best-interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *In the Interest of N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

"A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child." *In the Interest of M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.). Evidence of a parent's continued drug use supports a finding that he or she poses a present and future risk of physical or emotional danger to the child and that termination would be in the child's best interest. *See In the Interest of S.N.*, 272 S.W.3d 45, 53 (Tex. App.—Waco 2008, no pet.).

The clerk's record shows that based on the affidavit of Lena Brooks, a Department caseworker, the trial court issued an emergency temporary order in February 2020, naming the Department as the temporary sole managing conservator of the children based on its findings that there was an immediate and continuing danger to the physical health or safety of the children and that the continuation of the children in the home of the parent would be contrary to the children's welfare. According to Brooks's affidavit, the Department received a report during K.T.'s current F.B.S.S. case when K.T. gave birth to Kate in December 2019, but the concerns regarding K.T.'s mental health were ruled out because K.T. was under psychiatric care and not having any suicidal ideations. Brooks explained that in January 2020, she was assigned to K.T.'s case, and her review of the investigation showed that the Department became involved due to D.F.'s and K.T.'s criminal activity and drug use. Brooks's affidavit indicated that K.T. was pregnant with Kate during the investigation, K.T. tested positive for marijuana and cocaine, and the investigation found there was "Reason to Believe" regarding K.T. and Kari. According to Brooks, the case disposition regarding D.F. was found to be unable to determine because D.F. passed a random drug test and had limited caregiving time with Kari.

Brooks averred that in August 2019, K.T. and D.F. signed their Family Plan of Service with F.B.S.S., agreeing to participate in parenting, substance abuse

16

treatment, random drug testing, and for K.T. to maintain her mental health needs. Brooks further averred that after K.T. gave birth to Kate in December 2019, K.T. failed to return to outpatient services and to visit her mental health professionals to update her medications. Brooks explained that when she met with the family on February 5, 2020, K.T. admitted using marijuana, and Brooks learned that D.F. was on the run from probation and the U.S. Marshalls. Brooks put a safety plan in place that prohibited D.F. from having unsupervised contact with the children until he cleared up his warrants. Brooks also averred that on February 12, K.T. tested positive for marijuana, and on February 14, Brooks put a second safety plan in place after receiving a report that K.T. had an alternation with her mother while K.T. was holding Kate. Brooks further averred that on February 20, K.T. went to jail after testing positive for cocaine and marijuana during a court hearing concerning a pawn shop robbery that K.T. was allegedly involved in. Based on the circumstances, Brooks requested that Kari and Kate be placed with their maternal aunt and uncle due to concerns for the children based on their parents' ongoing drug use, K.T. being incarcerated, D.F. running from law enforcement, and K.T.'s and D.F.'s continuous disregard for the children's safety by placing them in dangerous situations. On February 25, the trial judge ordered the removal of the children due to the immediate and continuing danger to the physical health and safety of the children.

## Grounds for Termination-K.T.

The trial judge considered evidence that while K.T.'s case was with F.B.S.S., K.T. (1) tested positive for marijuana and cocaine and went to jail; (2) jumped out of a moving vehicle while pregnant with Kate; (3) admitted to using marijuana after giving birth to Kate; (4) failed to return to outpatient services and to visit her mental health professionals to update her medications; (4) and had an altercation with her mother while holding Kate. The trial court heard evidence that K.T. failed to complete her services, maintain employment, or provide an appropriate home. The trial judge heard that K.T. continued to test positive for drugs throughout the case and failed to timely seek inpatient treatment. The trial judge also considered evidence that K.T. failed to address her mental health issues, had been noncompliant with her medications, and self-medicated with illegal drugs. The trial court also heard evidence that K.T. had a history of having suicidal ideations, attempted suicide on multiple occasions, and jumped out of a moving vehicle while pregnant. The trial judge heard evidence that K.T continued to be in a relationship with D.F., and after D.F.'s release from jail, K.T. tested positive for drugs and was not focused on working her service plan. The trial court considered evidence K.T. was on probation and had continued to use drugs and engage in criminal activity in violation of the terms of her probation.

18

Viewing the evidence in the light most favorable to the trial judge's findings, we conclude that the trial judge could reasonably have formed a firm belief or conviction that K.T. knowingly placed or knowingly allowed Kari and Kate to remain in conditions or surroundings which endangered their physical or emotional well-being and engaged in conduct or knowingly placed Kari and Kate with persons who engaged in conduct that endangered their physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *In the Interest of J.O.A.*, 283 S.W.3d at 345; *In the Interest of J.F.C.*, 96 S.W.3d at 266; *In the Interest of J.S.*, 584 S.W.3d at 635; *In the Interest of I.D.G.*, 579 S.W.3d at 851-52; *In the Interest of P.H.*, 544 S.W.3d at 857-58; *In the Interest of E.R.W.*, 528 S.W.3d at 264; *In the Interest of M.L.L.*, 573 S.W.3d at 363; *In the Interest of M.E.-M.N.*, 342 S.W.3d at 263; *In the Interest of M.R.J.M.*, 280 S.W.3d at 502; *Cervantes-Peterson*, 221 S.W.3d at 253; *In the Interest of J.T.G.*, 121 S.W.3d at 125.

With respect to the best interest of the children, the trial court heard evidence that K.T. (1) had been in jail and continued to engage in criminal activity throughout the case, (2) continued to use drugs throughout the case, (3) failed to complete her family service plan, (4) failed to maintain employment or provide an appropriate home for the children, and that (5) Kari and Kate are happy and have stability in their current placement with relatives. The trial court considered Reed's testimony that it is in the children's best interest that K.T.'s parental rights be terminated

19

because K.T. has not demonstrated change over a three-year period. The trial court also heard Moore testify that it was in the children's best interest that K.T.'s parental rights be terminated because K.T. was sporadic and noncompliant and had been given ample time to work her services and demonstrate change, and the children needed consistency and a sober parent who is able to care for them.

Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. *See* Tex. Fam. Code Ann. § 263.307(a). As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court could reasonably conclude that termination of K.T.'s parental rights is in the best interest of Kari and Kate. *See id*. §§ 161.001(b)(2), 263.307(a); *see also In the Interest of J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72; *In the Interest of S.N.*, 272 S.W.3d at 53; *In the Interest of M.R.*, 243 S.W.3d at 821.

Grounds for Termination-D.F.

The trial judge heard evidence that D.F. tested positive for drugs throughout the case, failed to complete his services, and failed to maintain employment and provide an appropriate home. The trial court also considered evidence that D.F. continued to engage in criminal conduct after the children's removal. The record includes a Judgment Adjudicating Guilt dated April 8, 2020, which shows that D.F. pleaded "true" to violating the terms of his community supervision and that the trial

court found D.F. guilty of burglary of a habitation and assessed punishment at three years of imprisonment. The record also includes a Judgment of Conviction by Court dated April 8, 2020, showing that D.F. pleaded guilty to felony theft and the trial court assessed punishment of six months in jail.

Viewing the evidence in the light most favorable to the trial judge's findings, we conclude that the trial judge could reasonably have formed a firm belief or conviction that D.F. knowingly placed or knowingly allowed Kari and Kate to remain in conditions or surroundings which endangered their physical or emotional well-being and engaged in conduct or knowingly placed Kari and Kate with persons who engaged in conduct that endangered their physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *In the Interest of J.O.A.*, 283 S.W.3d at 345; *In the Interest of J.F.C.*, 96 S.W.3d at 266; *In the Interest of J.S.*, 584 S.W.3d at 635; *In the Interest of I.D.G.*, 579 S.W.3d at 851-52; *Interest of M.L.L.*, 573 S.W.3d at 363; *In the Interest of E.R.W.*, 528 S.W.3d at 264; *In the Interest of M.E.-M.N.*, 342 S.W.3d at 263; *In the Interest of M.R.J.M.*, 280 S.W.3d at 502; *In the Interest of J.T.G.*, 121 S.W.3d at 125; *Edwards*, 946 S.W.2d at 138.

With respect to the best interest of Kari and Kate, the trial court heard evidence that D.F. (1) had been incarcerated and continued to engage in criminal activity throughout the case, (2) continued to use drugs throughout the case in violation of his probation and parole, (3) failed to complete his Family Plan of

21

Service, (4) failed to maintain employment or provide an appropriate home for Kari and Kate to return to, and that (5) Kari and Kate were in a long-term placement with relatives who were meeting their needs and providing a consistent and drug-free home.

The trial court considered Reed's testimony that it is in the children's best interest that D.F.'s parental rights be terminated because of D.F.'s continued criminal activity and drug use. The trial court also heard Moore testify that it was in the children's best interest that D.F.'s parental rights be terminated because D.F. failed to comply with his service plan, failed to provide consistency and demonstrate a sober lifestyle, and was incarcerated for using drugs in violation of his probation. The trial court considered Moore's testimony that the children were happy and should remain in their current placement.

As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court could reasonably conclude that termination of D.F.'s parental rights is in the best interest of Kari and Kate. *See* Tex. Fam. Code Ann. §§ 161.001(b)(2), 263.307(a); *see also In the Interest of J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72; *In the Interest of S.N.*, 272 S.W.3d at 53; *In the Interest of M.R.*, 243 S.W.3d at 821.

We conclude that the Department established, by clear and convincing evidence, that D.F. and K.T. committed the predicate acts enumerated in sections

22

161.001(b)(1)(D) and (E) and that termination of D.F.'s and K.T.'s parental rights is in the best interest of Kari and Kate. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (2); *In the Interest of C.A.C., Jr.*, 2011 WL 1744139, at *1. Accordingly, we overrule D.F.'s and K.T.'s first, second, and fourth issues. Having concluded that the evidence was legally and factually sufficient to support the trial court's findings as to subsections 161.001(b)(1)(D), (E), and (2), we need not reach D.F.'s and K.T.'s third issue, in which D.F. and K.T. challenge the sufficiency of the evidence supporting the trial court's findings under sections 161.001(b)(1)(O). *See In the Interest of N.G.*, 577 S.W.3d at 235; *In the Interest of C.A.C., Jr.*, 2011 WL 1744139, at *1; *see also* Tex. R. App. P. 47.1. We affirm the trial court's judgment terminating D.F.'s and K.T.'s parental rights.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on August 11, 2021
Opinion Delivered August 26, 2021

Before Golemon, C.J., Kreger and Johnson, JJ.