

# NUMBER 13-21-00145-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF S.K.G., CHILD

**On appeal from the 24th District Court
of Victoria County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva
Memorandum Opinion by Justice Benavides**

Appellant K.D.G. appeals the termination of his parental rights to S.K.G.[1] *See* TEX. FAM. CODE ANN. § 161.001. By one issue, K.D.G. alleges the evidence was factually and legally insufficient to support a termination finding under family code § 161.001(b)(1)(D) and (E). *See id.* § 161.001(b)(1)(D), (E). We affirm as modified.

---

[1] To protect the child's privacy, the Court will refer to the parties by their initials. *See* TEX. R. APP. P. 9.8.

## I.     BACKGROUND[2]

In order to begin our analysis, it is important to explain what was contained in the clerk's record, but not presented as evidence during the hearing. This case started in January 2014, when the Texas Attorney General's Child Support Unit (AGCSU) filed a "Petition to Establish the Parent-Child Relationship" naming K.D.G. as the "father" of S.K.G. and another man, W.K.R., as the presumed father. The AGCSU asked for a "determination of parentage" and that K.D.G. be served in the "W.J. Estelle Unit" of the Texas Department of Criminal Justice (TDCJ), prior to a hearing being set on June 19, 2014. K.D.G. responded on June 18, 2014. He confirmed he was incarcerated at the Estelle Unit and later requested DNA testing. DNA testing in April 2015 determined that K.D.G. was S.K.G.'s father. An "Order Establishing the Parent-Child Relationship" was signed on April 2, 2015.

In June 2017, the AGCSU case was consolidated into this current case in which the Texas Department of Family and Protective Services (the Department) was involved. The events that led to that consolidation are contained within a "Permanency Report to the Court." It stated that

> [Mother] has been cooperative with the Department thus far. [Mother]

---

[2] K.D.G.'s initial court-appointed attorney filed an *Anders* brief stating that there were no non-frivolous grounds for appeal. *See Anders v. California*, 386 U.S. 738 (1967); *Porter v. Tex. Dep't of Protective & Regulatory Servs.*, 105 S.W.3d 52, 56 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.). In our review of the record, we found there to be an arguable issue that was non-frivolous and therefore, we abated the appeal and remanded it back to the trial court for the appointment of new appellate counsel. The trial court appointed new counsel, the case was reinstated, and new counsel filed a brief on behalf of K.D.G. on August 23, 2021. We note we have an obligation to ensure "as far as reasonably possible" that parental termination appeals are brought to final disposition within 180 days of the date the notice of appeal was filed. *See* TEX. R. JUD. ADMIN. 6.2(a).

appeared in court for the adversary hearing and is aware her children are in care. [Mother] is currently incarcerated and serving 30 years in a women's state prison in Marlin, Texas.

. . . .

Caseworker has been making diligent efforts to locate father . . . . [K.D.G.] has been deported to Jamaica as of 3/2017. Caseworker has met with [Mother] in the Victoria County Jail to ask about the whereabouts of [K.D.G.] but [Mother] was unable to provide any information.

. . . .

The police raided [Mother's] residence on 10/13/2016 and found drugs and paraphernalia in the home while the children were present in the home. . . . [A] second raid on 02/12/2017 again found drugs and paraphernalia in house with the children present.

. . . .

[S.K.G.] [was] placed with maternal grandmother [P.G.][3] and her siblings in Victoria, Texas.

K.D.G. filed a waiver of service in March 2018 regarding the current case. Another "Permanency Report to the Court" filed on August 8, 2018 stated: "[K.D.G.] has been uncooperative since being located in March 2018. He signed a waiver of service and a family plan of service. He was deported to Jamaica since March 2015."

On October 16, 2018, the trial court granted the Department's request to terminate Mother's parental rights following her voluntary relinquishment of parental rights and denied the Department's request to terminate K.D.G.'s parental rights. A family service plan was created for K.D.G. The Department communicated with K.D.G. through e-mail.

K.D.G. signed a family service plan but did not provide the Department with evidence of compliance and had sporadic contact with the Department via e-mail. Later,

---

[3] S.K.G. was later placed with her aunt, Y.G., in October 2019, and remained with her through this hearing.

in August 2019, although he had notice, K.D.G. did not appear at the status hearing. Continued updates from the Department stated that K.D.G. had not completed any of the required services. In December 2020, K.D.G. appeared via Zoom at a status hearing. The following month, the Department reported to the trial court that it provided K.D.G. with alternative ways to complete his services, but he had not completed the services.

On February 4, 2020, in a "Permanency Report to the Court," the Department stated it would be "filing a Modification Affidavit for Termination of Parental Rights of [K.D.G.] due to him not being compliant with the Service ordered in 2018." Also contained in the report were statements that:

> [K.D.G.] has not engaged in any of [the services required of him] stating he is very limited on services where he lives. [A previous Department worker] provided [K.D.G.] with several resources in his area however [K.D.G.] has expressed they are not near him and is unable to attend. [K.D.G.] has requested for the Department for the Department [sic] to write a letter to the Jamaican Government in hopes to be able to return to the U.S. to complete his services.

A final termination hearing was held on April 27, 2021. K.D.G. did not appear at the hearing, although he had appeared by Zoom in previous hearings. K.D.G.'s attorney was present at the termination hearing and requested a continuance because K.D.G. was not present on Zoom. The trial court denied the request for a continuance, and K.D.G.'s attorney advocated on his behalf during the hearing. The Department elicited testimony from Y.G., S.K.G.'s aunt and guardian; Karen Ortiz-Washington, the legal caseworker for the Department; and Cathy Tharp, the court appointed special advocate volunteer. All three testified that S.K.G. was doing exceptionally well in her placement with Y.G., was bonded with Y.G., barely knew K.D.G., and felt it would be detrimental to S.K.G. if K.D.G.

4

ever returned to her life.

Y.G. stated that K.D.G. "plays no role" in S.K.G.'s life "at this moment" and he had not physically seen her since she was two weeks old.[4] Y.G. explained she allowed K.D.G. to visit with S.K.G. through video chats. She said in part of 2019, K.D.G. called multiple times a week, but then it became less frequent, reducing to two to three times a month. In 2020, Y.G. said K.D.G. called S.K.G. less than six times the entire year and in 2021, K.D.G. had emailed Y.G. but had no contact with S.K.G. Y.G. also told the trial court that K.D.G. never sent cards, letters, gifts, or child support for S.K.G., even though he knows Y.G.'s address. Y.G. said that S.K.G. never asks about K.D.G., but she talks to the child about Jamaica.

Ortiz-Washington stated K.D.G. had previously interacted with her through e-mail, but she had not heard from him in over three weeks at the time of the hearing. She also explained that K.D.G. had attended previous hearings through Zoom even though he did not appear at this hearing. Ortiz-Washington stated that S.K.G. was removed in 2017 when her "parents"[5] were arrested for manufacture and delivery of several controlled substances, including crack cocaine, cocaine, and marijuana. She believed S.K.G. was "about six years old" at the time. Ortiz-Washington told the trial court she believed the 2017 arrest was what led to K.D.G. being deported to Jamaica. Ortiz-Washington also stated she felt K.D.G.'s lack of appearance at the hearing was "indicative of his interest

---

[4] S.K.G. was born in July 2011.

[5] Although Ortiz-Washington said the "parents" were arrested, K.D.G. was either already in custody on an unrelated charge or deported by the time S.K.G. was removed from her mother.

in retaining parental rights." On cross-examination, Ortiz-Washington stated that K.D.G. was aware of what was required of him, but he "always" had excuses when they discussed his compliance with the court's service plan.

Trial counsel argued against termination because K.D.G. had previously stated that he wanted to maintain a relationship with S.K.G. and did not want his rights terminated. The trial court granted termination under subsections D, E, N, and O of § 161.001(b)(1) of the family code and also found termination was in S.K.G.'s best interest.[6] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (b)(2). This appeal followed.

## II.    TERMINATION UNDER § 161.001(b)(1)(D) AND (E)

### A.    Standard of Review

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.); *see Stantosky v. Kramer*, 455 U.S. 745, 753 (1982). "Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases." *In re K.M.L.*, 443 S.W.3d

---

[6] Subsection (D) states that K.D.G. knowingly placed or allowed S.K.G. to remain in conditions which endangered the physical or emotional well-being of S.K.G. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Subsection (E) states that K.D.G. engaged in conduct or knowingly placed S.K.G. with persons who engaged in conduct which endangered the physical and emotional well-being of S.K.G. *Id.* § 161.001(b)(1)(E). Subsection (N) stated that K.D.G. constructively abandoned S.K.G. who was in the permanent or temporary managing conservatorship of the Department for not less than six months, that the Department made reasonable efforts to return S.K.G. to K.D.G., that K.D.G. did not regularly visit or maintain significant contact with S.K.G., and that K.D.G. demonstrated an inability to provide S.K.G. with a safe environment. *Id.* § 161.001(b)(1)(N). Subsection (O) stated that K.D.G. failed to comply with the provisions of the court order specifically establishing the actions necessary for S.K.G.'s return to K.D.G. *Id.* § 161.001(b)(1)(O).

6

101, 121 (Tex. 2014) (Lehrmann, J., concurring). Accordingly, termination proceedings must be strictly scrutinized. *Id.* at 112. In such cases, due process requires application of the "clear and convincing" standard of proof. *Id.* (citing *Stantosky*, 455 U.S. at 769; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)). This intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the beyond a reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re L.J.N.*, 329 S.W.3d at 671. "'Clear and convincing evidence' means a 'measure of degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (quoting Tex. Fam. Code Ann. § 101.007); *see In re K.M.L.*, 443 S.W.3d at 112–13 ("In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true."). "When reviewing a finding made by clear and convincing evidence, we determine whether the evidence is sufficient to make the existence of a fact highly probable, not whether the evidence supporting the finding is sufficient to make the existence of the fact more probable than not, as in ordinary civil cases." *In re D.M.*, 58 S.W.3d 801, 808 (Tex. App.—Fort Worth 2001, no pet.).

The trial court may order the termination of the parent-child relationship if the court finds by clear and convincing evidence that: (1) the parent committed an act or omission described in family code subsection 161.001(b)(1), and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b); *In re N.G.*, 577 S.W.3d at 232.

7

"To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d at 232; *see* TEX. FAM. CODE ANN. § 161.001(b). However, the Texas Supreme Court has made it clear that the sufficiency of the evidence supporting termination under subsections D or E must always be reviewed on appeal, regardless of whether the evidence supporting termination under another statutory ground is sufficient. *See In re L.G.*, 596 S.W.3d 778, 781 (Tex. 2020) (per curiam); *In re N.G.*, 577 S.W.3d at 235 ("When a parent has presented the issue on appeal, an appellate court that denies review of a section 161.001(b)(1)(D) or (E) finding deprives the parent of a meaningful appeal and eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children.").

"In conducting a legal-sufficiency review, the reviewing court cannot ignore undisputed evidence contrary to the finding, but it must otherwise assume the factfinder resolved disputed facts in favor of the finding." *In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). "Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true." *Id.* at 631.

"In a factual-sufficiency review, the appellate court must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id.* "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the

8

finding was true." *Id.*

**B. Applicable Law**

**1. Termination under § 161.001(b)(1)(D)—Endangering Environment**

A parent's rights to his or her child may be terminated if the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). "Endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *In re V.A.*, 598 S.W.3d 317, 328 (Tex. App.— Houston [14th Dist.] 2020, no pet. h.); *see In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). "Knowingly" requires that "the parent be aware of but disregards" the potentially endangering environment at issue. *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

"Endangerment under subsection (D) focuses on evidence related to the child's environment." *In re V.A.*, 598 S.W.3d at 328 (citing *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). "The relevant time frame to determine whether there is clear and convincing evidence of endangerment is before the child was removed." *In re I.D.G.*, 579 S.W.3d 842, 850 (Tex. App.—El Paso 2019, pet. denied) (citing *Ybarra v. Tex. Dep't of Human Servs.*, 869 S.W.2d 574, 577 (Tex. App.—Corpus Christi–Edinburg 1993, no writ)). It is not necessary, however, that the Department show the child's environment directly threatened or injured the child. *See In re M.M.*, 584 S.W.3d 885, 889 (Tex. App.—Amarillo 2019, pet. denied). Further, termination under subsection (D) may be based on a single act or omission. *See id.* at 889–90; *In re*

9

*J.E.M.M.*, 532 S.W.3d 874, 884 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *In re E.M.*, 494 S.W.3d 209, 221–22 (Tex. App.—Waco 2015, pet. denied); *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *see also In re L.S.*, No. 13-18-00632-CV, 2019 WL 1474521, at *7 (Tex. App.—Corpus Christi–Edinburg Apr. 4, 2019, pet. denied) (mem. op.).

The acceptability of living conditions and parental conduct in the home are subsumed in the endangerment analysis. *See In re V.A.*, 598 S.W.3d at 328; *In re J.E.M.M.*, 532 S.W.3d at 880–81; *In re J.D.*, 436 S.W.3d 105, 114 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Likewise, "inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in the home is a part of the 'conditions or surroundings' of the child's home" under subsection (D). *In re M.D.M.*, 579 S.W.3d 744, 764 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

## 2.    Termination under § 161.001(b)(1)(E)—Endangering Course of Conduct

Subsection (E) allows for termination of parental rights if clear and convincing evidence supports a conclusion that the parent "engaged in conduct . . . which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). As noted, "endanger" means "to expose to loss or injury [or] to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The term means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," but "it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.*; *see In re J.O.A.*, 283 S.W.3d 336, 345

(Tex. 2009). "Indeed, the law does not require that the child be a victim of abusive conduct before the Department can involuntarily terminate a parent's rights to the child." *In re C.J.F.*, 134 S.W.3d 343, 352 (Tex. App.—Amarillo 2003, pet. denied) (citing *Dall. Cty. Child Protective Servs. v. Bowling*, 833 S.W.2d 730, 733 (Tex. App.—Dallas 1992, no pet.)). Unlike subsection (D), termination under (E) "must be based on more than a single act or omission." *See Ruiz v. Tex. Dep't of Family & Protective Servs.*, 212 S.W.3d 804, 818 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

"In determining whether a parent engaged in a course of 'endangering' conduct, a trial court may consider conduct that occurred before and after the child's birth, in the child's presence and outside the child's presence, and before and after removal by the Department." *In re C.V.L.*, 591 S.W.3d 734, 750 (Tex. App.—Dallas 2019, pet. denied) (quoting *In re J.O.A.*, 283 S.W.3d at 345. "The relevant inquiry is whether evidence exists that a parental course of conduct endangered the child's physical or emotional well-being." *In re R.D.*, 955 S.W.2d 364, 368 (Tex. App.—San Antonio 1997, pet. denied). Ground (E) "refers only to the parent's conduct, as evidenced by the parent's acts, but also by the parent's omissions or failure to act." *In re C.V.L.*, 591 S.W.3d at 750. Among the types of actions or omissions constituting evidence meeting this endangerment standard are criminal activity, convictions, and incarceration; drug abuse; and domestic violence and propensity for violence. *See In re M.D.M.*, 579 S.W.3d 744, 765 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *In re L.M.*, 572 S.W.3d 823, 834 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *In re R.A.G.*, 545 S.W.3d 645, 652 (Tex. App.—El Paso 2017, no pet.).

**C.     Discussion**

By his sole issue, K.D.G. argues that there was legally and factually insufficient evidence to support the termination of his parental rights under § 161.001(b)(1)(D) and (E).

The Department argues the evidence was sufficient to support a finding under § 161.001(b)(1)(E).[7] It states the trial court could have found that K.D.G. allowed S.K.G. to be surrounded by endangering circumstances from evidence of her home environment, of supposed illegal drug use, that she could have suffered from physical or emotional loss, could have been subject to abuse due to K.D.G.'s absence from her life, and that his criminal history led to his deportation.

However, little evidence to support those allegations was presented at the termination hearing for K.D.G. Regarding allegations that K.D.G. left S.K.G. in an endangering environment or with persons who engaged in endangering conduct, there was no evidence presented under subsections D and E that K.D.G. knew prior to 2015 that she was his daughter. *See Djeto v. Tx. Dep't of Protect. & Reg. Serv's*, 928 S.W.2d 96, 98 (Tex. App.—San Antonio 1996, no pet.) ("In order for an enforceable obligation to exist requiring the support of an illegitimate child, there must be a court order, judicial admission, or an unequivocal acknowledgement of paternity.").

When K.D.G. was determined to be S.K.G.'s father, he was already incarcerated for an unknown offense. The Department presented no evidence of a judgment regarding the offense, when he was incarcerated for said offense, or regarding his release. There

---

[7] The Department did not refute any of K.D.G.'s argument under subsection D. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D).

was simply no evidence presented that he had any knowledge of what was occurring in S.K.G.'s life from 2015 to March 2018, when K.D.G. was served with this suit. Additionally, when Mother was asked about K.D.G.'s whereabouts, she did not know how to contact him. Without any evidence that K.D.G. knew about the circumstances surrounding S.K.G.'s life, any finding that he knowingly allowed her to remain in a dangerous environment is unfounded.

The Department argues that illegal drug use can support the trial court's findings. K.D.G. was required to undergo drug testing as part of his service plan and failed to provide proof of such testing. However, there was no evidence presented that K.D.G. suffered from a drug abuse problem at any point during this case. The Department relies on Mother's arrest and subsequent conviction for drug possession to support its argument that K.D.G. was involved with narcotics. But again, no evidence of any past drug use on the part of K.D.G. specifically was presented to the trial court. While the Department elicited testimony that K.D.G. had little communication with S.K.G. as time went on and that he did not follow his service plan requirements, which required drug testing, very little testimony or evidence was presented regarding any of the arguments the Department now makes to support findings under subsection D or E. The evidence does not support a determination that because K.D.G. did not comply with any of his service plan, he was also using illegal narcotics.

The Department also alleges that S.K.G. could have been subjected to physical or emotional loss due to K.D.G. not knowing her living situation and his absence from her life. K.D.G.'s parentage was determined in 2015. He was deported sometime before

13

March of 2017, and Mother did not know how to contact him. There is no evidence K.D.G. was aware of this termination proceeding until 2018 when he filed his waiver of service. K.D.G. made some attempt to interact with S.K.G. initially through video chat on Facebook. He knew by then she was residing with family members. K.D.G. was unable to return to the United States legally so his ability to be more involved in S.K.G.'s life was limited. The Department did present evidence that although initially K.D.G. tried to interact as best he could with S.K.G., his interactions had declined considerably throughout 2019 until 2021.

The Department "bears the burden of showing how the allegations were part of a voluntary course of conduct endangering" S.K.G.'s well-being or how K.D.G. "knowingly placed or knowingly allowed [S.K.G.] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child," but based on the record before us, the Department offered no such evidence. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). While we agree that K.D.G.'s previous imprisonment and deportation are factors that can be considered in a termination proceeding, the evidence presented regarding the circumstances surrounding those events were almost non-existent in the termination proceeding and "no reasonable fact-finder could have formed a firm belief or conviction" that K.D.G. engaged in a course of endangering conduct based on the information presented. *In re E.N.C.*, 384 S.W.3d 796, 804 (Tex. 2012) (concluding deportation or incarceration are factors to be considered in endangerment but insufficient in and of themselves to support endangerment); *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). The Texas Supreme Court held that while "an offense occurring

14

before a person's children are born can be a relevant factor in establishing an endangering course of conduct," *see J.O.A.*, 283 S.W.3d at 345, the "Department bears the burden of introducing evidence concerning the offense and establishing that the offense was part of a voluntary course of conduct that endangered the children's well-being." *In re E.N.C.*, 384 S.W.3d at 804–05. Here, the Department offered no evidence of K.D.G.'s criminal history, why he had been incarcerated in 2014, when he was released, or if he had any prior or subsequent offenses to show a continuing pattern.

Because the evidence presented at the termination hearing mainly dealt with subsections N and O, we find the evidence was insufficient to support the trial court's findings under subsection D and E. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O). Even though a parental termination may be supported by a finding under one of the subsections, the Texas Supreme Court stated that it "recognized that [the holding in *In re N.G.*] may mean that appellate courts will review findings under [§] 161.001(b)(1)(D) or (E) without reviewing other grounds. Because those other grounds carry no weight for parental rights to other children under [§] 161.001(b)(1)(M), due process demands no more." *In re N.G.*, 577 S.W.3d at 237, n.1. Because of the Texas Supreme Court's ruling in *In re N.G.*, and the possible future due process consequences implicated, we sustain K.D.G.'s sole issue.

### III.    CONCLUSION

We modify the judgment terminating K.D.G.'s parental rights to delete the affirmance under subsections (D) and (E) of family code § 161.001(b)(1). *See* TEX. FAM. CODE ANN § 161.001(b)(1)(D), (E). The judgment is affirmed as modified. *See* TEX. R.

15

APP. P. 43.2(b); *Int'l Bus. Machines Corp. v. Lufkin Indus., Inc.*, 564 S.W.3d 15, 38 (Tex. app.—Tyler 2017) ("This [C]ourt has the power to modify the judgment of the court below to make the record speak the truth when we have the necessary information to do so."), *aff'd in part, rev'd in part on other grounds*, 573 S.W.3d 224 (Tex. 2019).

GINA M. BENAVIDES
Justice

Delivered and filed on the
21st day of October, 2021.