

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00426-CV

**IN THE INTEREST OF R.J.R.**, a Child

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2024PA01120
Honorable Richard Garcia, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:       Irene Rios, Justice
               Lori Massey Brissette, Justice
               Velia J. Meza, Justice

Delivered and Filed: October 1, 2025

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her child,

challenging only the finding that termination of her parental rights is in the child's best interest.[1]

Because we find the evidence sufficient to support the trial court's finding, we affirm.

### BACKGROUND

In July 2024, the Department of Family and Protective Services (the "Department")

received a referral relating to the neglectful supervision and physical neglect of the child born in

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the child's mother as "Mother," and we refer to the child using his initials or as "the child." *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

2023, R.J.R. The Department visited the home and, upon seeing the conditions in which the child was being raised,[2] sought a court order for immediate removal. Mother became combative and fled the home with the child before removal could occur. The child was found several days later and taken into the Department's care.

On July 23, 2024, the Department was named temporary managing conservator of the child. The child was placed with fictive kin—a caregiver who had previously adopted Mother's two other children after Mother's rights to those children were also terminated. The Department created a Family Service Plan which required Mother to complete a drug assessment and engage in any recommended treatment plan, participate in random drug testing, complete a parenting class, find and maintain a stable home for the child, and complete a psychological evaluation and engage in counseling. On September 23, 2024, the trial court adopted the Family Service Plan as an order of the court and found Mother had reviewed and signed it and understood her failure to comply with the requirements therein could result in the restriction or termination of her parental rights.

At the January 2025 Permanency Hearing, Mother—who, up to that point, had not taken any steps to begin the services required of her—stated she would begin services. But, the following day, she ceased all communications with the Department. On May 13, 2025, a final trial was held before Judge Richard Garcia. Mother failed to appear. After hearing the testimony of the Department's investigator and caseworker and considering the exhibits introduced as evidence,[3] Judge Garcia found grounds to terminate Mother's parental rights under Texas Family Code

---

[2] According to the testimony of the Department's investigator, Mother lived on a piece of property that was inhabited by several people who were otherwise homeless. The home itself was unsanitary, with bugs and mold being of concern. Buckets of feces with maggots were seen inside and outside the home, and weapons were kept within the reach of the child. Because the Department had a concern regarding Mother's drug use, based on prior terminations of her rights to two older children, the Department asked Mother for a drug test, which she refused.

[3] The trial court admitted as exhibits the Agreed Temporary Order, the Family Service Plan signed by Mother, the Status Hearing Order, and the Certificate of Paternity Registry Search.

§ 161.001(b)(1)(D), (N), and (O) and found that termination is in the best interest of the child pursuant to Texas Family Code § 161.001(b)(2). *See* TEX. FAM. CODE § 161.001(b). Mother appealed, challenging only the best interest finding.

### STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE § 161.001(b)(1)–(2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See, e.g.*, *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review). "In reviewing the legal sufficiency . . . , we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that [we] should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found

to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). We "should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. We "must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *See In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re O.L.W.*, No. 04-24-00208-CV, 2024 WL 3588395, at *2 (Tex. App.—San Antonio July 31, 2024, pet. denied) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations. *J.F.-G.*, 627 S.W.3d at 312; *see also In re R.R.A.*, 687 S.W.3d 269, 279 n.50 (Tex. 2024) ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

### BEST INTERESTS

In her sole issue, Mother challenges the sufficiency of the evidence to support the trial court's findings that termination of her parental rights was in the child's best interest. When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d

112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[4] *See id.* § 263.307(b). We also consider the factors set forth in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[5] These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *See in re J.P.H.*, No. 04-23-00131-CV, 2023 WL 5280376, at *3 (Tex.

---

[4] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

*Id.* § 263.307(b).

[5] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley*, 544 S.W.2d at 371–72; *see, e.g.*, *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

App.—San Antonio Aug. 16, 2023, pet. denied) (citing *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ)).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

*(A) Department's Reasons for Termination*

Here, the evidence presented to the trial court raised the following concerns: (a) Mother failed to take any action to provide a more stable or safe home for the child or to address the conditions which led to removal; (b) Mother refused four requests to take drug tests by the Department and failed to comply with a trial court order for a hair follicle test, despite the fact that her drug use was a concern of the Departments and had contributed to her losing her rights to two older children; and (c) Mother took no action to demonstrate a willingness to address the issues leading to the removal of her child or to otherwise comply with the Family Service Plan.

*(B) Best Interest Factors*

*(1) Desires of the Children and Whether the Children Are Fearful of Returning to Mother*

The Department elicited no testimony regarding the child's desires. "When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re*

*J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied) (quoting *In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied)). Here, the Department testified that mother has had no visits with the child since removal because of a no contact order that was initially put into place due to her absconding with the child to avoid removal.[6] The child was placed with fictive kin alongside his two half-siblings and has bonded with his caregiver who is ready to adopt him. *See In re I.D.G.*, 579 S.W.3d 842, 853–54 (Tex. App.—El Paso 2019, pet. denied) ("Evidence that a child is well-cared for by the foster family, is bonded to the foster family, and has spent minimal time in the presence of a parent is relevant to the best interest determination under the desires of the child factor.").

*(2) Emotional and Physical Needs, Age and Physical and Mental Vulnerabilities*

At the time of trial, R.J.R. was almost two years old. While his speech is delayed, he is being evaluated and the Department testified that the caregiver is addressing his needs in that regard. Otherwise, he is healthy and developing in normal fashion.

*(3) Emotional and Physical Dangers, History of Physical Abuse or Substance Abuse, and Magnitude of Harm*

The condition of the home in which the child was being raised and Mother's complete refusal to take drug tests, complete a drug assessment, or engage in drug counseling despite her prior loss of parental rights to two older children support the trial court's finding that termination was appropriate under Texas Family Code § 161.001(b)(1)(D), (N), and (O), which may also constitute evidence illustrating termination is in the child's best interest. *See C.H.*, 89 S.W.3d at 28; *In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.) (holding failure to

---

[6] The no contact order was never challenged because Mother never took action to try to comply with the Family Service Plan or to otherwise communicate her desire to regain custody from the Department. Although Mother, at one point, said she had transportation issues, she chose not to engage even after she had acquired a vehicle. She had little communication with the Department, completely cutting off same in late 2024, more than six months before the final trial.

comply with drug test request can support factfinder's inference Mother continues to use illegal drugs). The Department testified that Mother took no actions to address the issues that led to removal or to otherwise attempt to comply with the Family Service Plan. *See In re O.N.H.*, 401 S.W.3d 681, 687 (Tex. App.—San Antonio 2013, no pet.) ("Non-compliance with a service plan is probative of a child's best interest.").

*(4) Parental Abilities*

The Department testified it was concerned about Mother's ability to maintain a safe, stable home for the child and to address her illegal drug use. Further, the Department testified as to Mother's lack of desire to take any steps necessary to preserve her rights to the child.

*(5) Programs Available and Social Support System*

Mother has not attempted to take advantage of the programs and services offered to her by the Department. Even after she obtained a vehicle, addressing any concerns regarding transportation, she failed to engage in the available programs offered by the Department.

*(6) Plans for the Children*

Here, the Department testified that the caregiver who previously adopted Mother's two older children is ready, willing, and able to adopt R.J.R.

*(7) Stability of the Home*

As set forth above, the conditions of the home in which Mother was raising the child raised sufficient concern to warrant immediate removal and Mother demonstrated no willingness to address those conditions.

*(8) Acts or Omissions and Excuses*

Mother failed to engage with any of the services offered by the Family Service Plan. Mother also refused the Department's requests to take drug tests on four occasions and failed to comply with the trial court's order requiring a hair follicle test.

*(9) Frequency and Nature of Out-of-Home Placement*

Mother previously lost her rights to two older children. R.J.R. was placed with those two older children in the same caregiver's home.

*(10)    Results of Psychiatric, Psychological, or Developmental Evaluations*

There was no evidence presented regarding the results of psychiatric, psychological, or developmental evaluations of Mother, as she refused to comply with the Family Service Plan which required her to complete a psychological evaluation.

*(11)    Willingness and Ability to Complete Counseling and Cooperate with the Department*

As mentioned above, the evidence established that Mother was not willing to complete counseling or cooperate with the Department.

**CONCLUSION**

Having reviewed the record and considered all the evidence under the appropriate standard of review and given that these factors weigh in favor of termination, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the child's best interests. *See* TEX. FAM. CODE § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573. Accordingly, we affirm the trial court's order of termination.

Lori Massey Brissette, Justice